BARRY v. THE HANNIBAL & ST. JOSEPH RAILROAD
COMPANY, *Appellant*.

1.  **Railroads**: MASTER AND SERVANT: INJURY TO SERVANT: NEGLI-
     GENCE. In an action against a railroad company by a wife for the
     wrongful death of her husband, an engineer in defendant's employ,
     where he pulled his freight train onto a switch to allow a passenger
     train, then due, to pass on the main track, and not being able to see
     the rear of his train for obstructions and because of a curve in the
     track, stepped onto the main track at a call from the rear brake-
     man and directed the fireman to pull the train forward so as to
     clear the main track, and while so standing on the track, he was
     struck and injured by a rapidly moving hand-car operated by
     section-men who knew that the train-men were at their accustomed
     work with the train, and who could have seen deceased on the
     track had they watched in advance of them, there is abundant
     evidence to show that they did not manage the hand-car as prudent
     persons would do under such circumstances, this being the standard
     by which the question of negligence on their part should be deter-
     mined.

Barry v. The Hannibal & St. J. Ry. Co.

2. ———: NEGLIGENCE: CUSTOM: DISREGARD OF RULE OF MASTER. Where there was an established usage on the part of the engineers of the company, known and acquiesced in by the superior officers, to allow firemen to make short moves, when the engineer was not on the engine, but near enough to give directions, the engineer, under the circumstances of this case, should not be held guilty of contributory negligence for violating a rule not to permit firemen to operate the engine when the engineer was not upon it.

3. ———: ———: ———: ———. Knowledge of such usage need not be shown by direct evidence that the officers saw it practiced, but it may be inferred from circumstances, as from its notoriety, long standing and that it was known to the company's employes.

4. ———: MASTER AND SERVANT: DUTY OF SERVANT: NEGLIGENCE. While it is a general rule that the servant has no claim on the master for damages for an injury received by voluntarily assuming to do something which the master did not employ him to do, yet in case of emergency he may, of his own volition, step outside of the line of his usual duties, and if this departure is only such as the necessities of the case fairly and reasonably call for, keeping in view the character of the work he is called upon to do, it will not of itself defeat a recovery of damages in case he is injured. Whether he is guilty of negligence is a question for the jury, and his conduct must be tried in the light of all of the surroundings.

5. Practice: NEGLIGENCE. If upon a given state of facts, negligence can be clearly asserted, then the court may so declare; but if reasonable minds may differ as to the conclusion to be drawn from the given facts, the question of negligence must be determined from all the surrounding circumstances; it is then a mixed question of law and fact and must be determined by the jury.

6. ———: ———: INSTRUCTIONS. Where the instructions fairly submit the case upon the whole evidence, and the evidence clearly supports the verdict, the judgment will not be reversed because of a seeming conflict in the instructions.

*Appeal from Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Strong & Mosman* for appellant.

(1) The demurrer to the case made by the plaintiff's evidence should have been sustained, and the

first of defendant's refused instructions should have been given. (*a*) Because there was not a scintilla of evidence tending to show negligence in the particular specified in the petition. *Railroad v. Jones*, 95 U. S. 439; *Kitteringham v. Railroad*, 62 Ia. 285; *Dungan v. Champlain Co.*, 56 N. Y. 1; *Odell v. Solomon*, 29 N. Y. 685. (*b*) So far as the trial of the issues in this case are concerned, Barry was, and must be regarded as a trespasser. At least he was upon the track, under such circumstances as created no duty from the defendant to him. *Rine v. Railroad*, 88 Mo. 298; *Henry v. Railroad*, 76 Mo. 295; *Hallihan v. Railroad*, 71 Mo. 119; *Kinealy v. Railroad*, 69 Mo. 66; Cooley on Torts, 659; *Railroad v. Holmes*, 5 Colo. 197; Field on Damages, sec. 39; *Morrissey v. Railroad*, 3 Atlantic, 10. (2) Defendant's servants had the right to assume that Barry would exercise ordinary care, and be engaged in his ordinary duties, and were guilty of no negligence in failing to anticipate his presence on the track. *Hallihan v. Railroad*, 71 Mo. 117, 118; *Langan v. Railroad*, 72 Mo. 398; *Purl v. Railroad*, 72 Mo. 172; *Newson v. Railroad*, 29 N. Y. 390; *Rine v. Railroad, supra*. (3) There was no excuse whatever for Barry placing himself between the rails of the main track. It was entirely unnecessary. No duty called him there, and no useful purpose could be subserved by his being there; he thereby absented himself from the position assigned him, abandoning the duties he was employed to perform and turned them over to another, in violation of the orders published by the company, for his guidance, in the conduct of his duties. Under such circumstances, a servant has no right of recovery from his master. He cannot expose himself to dangers not incident to his employment, at the risk of the master. *Lockwood v. Railroad*, 55 Wis. 50; *Martenson v. Railroad*, 60 Ia. 705; *Railroad v. Sentimeyer*, 72 Penn. 276; *Railroad v. Ray*, 70 Ga. 674; *Railroad v. Jones*, 95 U. S. 443;

*O' Neil v. Railroad,* 45 Iowa, 546 ; *Felch v. Allen,* 98 Mass. 574 ; *Beckham v. Hilyar,* 47 N. J. L. 12 ; *Wright v. Rawson,* 52 Ia. 329. (4) (*a*) The court erred in giving to the jury plaintiff's first instruction. There was no evidence from which the jury could find the facts hypothecated therein. (*b*). The running of the hand-car, considering the time, place and circumstances detailed in the testimony, was not negligent. *Maskeck v. Railroad,* 71 Mo. 276 ; *Boland v. Railroad,* 36 Mo. 492 ; *Parsons v. Printing Co.,* 7 Mo. App. 594. (*c*) Said instruction, in so far as it predicated a recovery upon the fact that the car was under the management of the section-boss, was a departure from the petition. (*d*) Said instruction was inconsistent with the defendant's seventh and eighth instructions, in telling the jury to consider the failure of the defendant to have a light upon the car, and to consider the speed of the car in arriving at their verdict.

*S. P. Huston, H. Lander* and *A. W. Myers* for respondent.

( 1 ) The rules read in evidence cannot be held as matter of law to make Barry guilty of contributory negligence, from the mere fact that he was off his engine at the time he was killed. (*a*) Because it was not in evidence that such alleged rules were made known to him. *Sprong v. Railroad,* 58 N. Y. 56 ; Wood on Master & Servant [ 2 Ed. ] sec. 401, p. 791 ; *Fay v. Railroad,* 11 Am. & Eng. R. R. Cases, 193. ( *b* ) Because the testimony shows that such alleged rules were never enforced—that the general custom was for these insignificant moves about stations to be made in this way. Knowledge of such custom is presumed. Lawson on Usages and Customs, sec. 21, pp. 40, 41, 42 ; Wood on Master & Servant, sec. 401, p. 791 ; *McGee v. Railroad,*

92 Mo. 220; *Crane v. Railroad*, 87 Mo. 588; *Fay v. Railroad*, 11 Am. & Eng. R. R. Cases, 193. (*c*) Because his action in permitting the fireman to make this move did not cause or produce the disaster complained of— the operating of the engine did not cause Barry's death. Wood on Master and Servant [2 Ed.] 791. (*d*) Because there was an emergency which made it eminently a question of fact whether Barry, in doing what he did to expedite the side-tracking of his train was guilty of negligence. *Sears v. Railroad*, 53 Ga. 630; *Scammon v. Railroad*, 62 N. Y. 251; Wood on Master and Servant [2 Ed.] p. 181, and note on p. 182; 2 Thompson on Neg., sec. 21, p. 1017. (2) This question of fact was properly submitted to the jury in instructions given. *Shehan v. Railroad*, 12 Am. & Eng. R. R. Cases, 235. (3) Even conceding that the deceased may have been negligent, yet if the section-boss and his crew on the hand-car were negligent, after they discovered his danger, or after they might have discovered him, if they could have done so by the exercise of ordinary care and watchfulness, then plaintiff was entitled to recover. *Werner v. Railroad*, 81 Mo. 374; *Kelly v. Railroad*, 75 Mo. 138; *Harlan v. Railroad*, 65 Mo. 22; *Donohue v. Railroad*, 91 Mo. 365; *Keim v. Railroad*, 90 Mo. 323. The testimony shows that Barry was on the track before any steam escaped, and could have been seen if they had looked ahead in the direction they were going, instead of back at the approaching passenger train, and the jury, in answer to special interrogations, so find.

BLACK, J.—The widow of Timothy Barry brought this suit to recover damages for the death of her husband. From the evidence, it appears that defendant's road at Stewartsville runs in an east and west direction. Barry, who was an engineer in the employ of the defendant, pulled his train of twenty-two freight cars in at the west switch between sun-down and dark

to clear the main track for a west-bound passenger train then due. The head brakeman went forward to couple some loose cars standing on the side-track that they could be moved forward out of the way. When Barry stopped his train he supposed it was in on the side-track. He could not see to the rear of it from the south side because of some cattle-pens, nor from the north side of the cab because of a curve in the road to the south of the west switch. He got down on the ground to examine his engine, and while there he heard a call from the rear brakeman, who stood on the main track some eighteen car-lengths from the engine. Barry stepped to the north six or seven feet to and on the main track. He then directed the fireman to move the train forward. While standing on the main track and looking to the rear of his train, a hand-car with five or six section-men on it came from the east, ran on him and inflicted the injuries from which he died ; and the plaintiff's cause of action is predicated on the negligence of these section-men.

These section men were running their car at a very rapid rate of speed, evidently to keep in advance of the passenger train. They reached the depot at 7 : 30 and the passenger train was due at 7 : 22 ; so that they were on the time of the passenger train. When at the depot they could see to and beyond the place where Barry was hurt. He stood some four hundred feet west of the depot. Hadley, one of the men on the hand-car, testified that he was facing west and kept a sharp look-out ; that they were about one hundred and fifty yards from the engine when they saw a clear track ; that when they got a little further the engine began to move and the escaping steam obscured their vision, so that they did not see Barry until they got within forty or fifty feet of him. The witness says that up to that time he could have seen a man on the track, but he saw no one. The evidence of the fireman and two brakemen is to the

effect that Barry stood on the main track not less than five or ten and not more than thirty seconds before the steam began to escape. The evidence shows that it was not, in general, the duty of the engineer to leave his engine to receive signals, but that it was the duty of the brakemen to put themselves in a position to be seen by the engineer or fireman.

The defendant put in evidence rule 41 which it is conceded relates to engineers and firemen, and is in these words : " 41. They must not permit the fireman to operate the engine except when they are themselves present upon them. Both the engineer and fireman must remain upon the engine while it is at work." There is, however, much evidence to the effect that, at the time of the accident and for years prior thereto, it had been the constant custom of engineers on the defendant's road to allow their firemen to make short moves, like the one in question, the engineer being near at hand, but not on the engine at the time. This custom is shown to have prevailed at all stations, except terminal points, where hostlers take charge of the engines on their arrival.

1. The point made by the appellant, that there is no evidence of negligence on the part of the section-men, is clearly not well taken. They knew the train-men were at their accustomed work with the train and that these train-men would not be on the watch for the hand-car ; for the usual working hours of the section-men were from seven to six o'clock. Instead of taking their car off the track and waiting for the passenger train to pass, they came to the depot in great haste, and the evidence tends to show that, though then out of danger, they did not attempt to slacken their speed. As Barry was on the main track from five to thirty seconds before the steam began to escape, it may be inferred that the section-men were not on close watch of the track in advance of them, and if they had been they would have

seen him. There is abundant evidence tending to show that they did not manage the car as prudent persons would do under the circumstances, and this is the standard by which the question of negligence on their part should be determined.

2. The position taken by the appellant, that Barry should be held guilty of contributory negligence on a demurrer to the evidence because violating rule 41 at the time of the accident, is untenable. If there was an established usage on the part of the defendant's engineers, known and acquiesced in by the superior officers, to allow firemen to make short moves, the engineer not at the time being on the engine, but near enough to give directions, then Barry could not and ought not to be held guilty of contributory negligence for violating the rule. Under these circumstances, the custom would amount to an abandonment of the rule by the defendant to the extent of the custom. Indeed, it is probable that defendant's officers did not regard this slight departure as a violation of the rule at all. The court, by the second instruction given at the request of plaintiff, told the jury that if there was such a custom, then they might take that into consideration in determining whether deceased was negligent in leaving the engine. Defendant has no right to complain of such an instruction.

But it is further insisted that there is no evidence that the superior officers knew of the existence of such a usage. Knowledge of the usage need not be shown by direct evidence that these officers saw the custom practiced. Notice may be inferred from circumstances. It may be implied from the notoriety of the custom. Lawson on Usages & Customs, sec. 21. The evidence in this case tends to show that the usage was well known among the defendant's employes and of long standing, and from this the jury could with propriety infer notice to the defendant's officers.

3.   While it was not the duty of an engineer to leave his engine for the purpose of getting signals, still it cannot be ruled as a matter of law that the plaintiff must fail in this suit because Barry stepped out on the main track to get the signals, even though it was no part of his general duties thus to do.   As a general rule it may be conceded that a servant has no claim upon the master for damages for an injury which the servant receives by voluntarily assuming to do something which the master did not employ him to do.   Emergencies do arise when he may be called upon to make slight depart-ures from his accustomed work.   Wood on Mas. & Ser., sec. 89.   So in case of an emergency, he may of his own volition step outside of the line of his usual duties.   If the departure be such only as the necessities of the case fairly and reasonably call for, keeping in view the char-acter of the work which the servant has contracted to perform, then such departure will not of itself defeat a recovery of damages in case he is injured.   2 Thomp. on Neg. 1017.   Here the head brakeman had gone to the forward cars, so that he could not transmit the signal from the rear brakeman to the engine, as was the usual practice.   The conductor was at the depot.   It seems the rear car had not cleared the switch, and the passenger train was then due.   Under these circumstances the jury may well have found that an emergency existed which made it proper, or even the duty of Barry to step out on the main track to get the signals, and the question was one for the jury to determine.

Of course the plaintiff cannot recover if Barry was guilty of negligence in standing on the main track without looking out for approaching cars.   Whether he was guilty of negligence in that respect was again a question for the jury.   The fact that he stood on the main track from five to thirty seconds, without looking to the east, does not as a matter of law make him guilty of negligence.   His conduct must be tried in the light of

all of the surroundings. If upon a given state of facts, negligence can be clearly asserted, then the court may so declare; but if reasonable minds may differ as to the conclusions to be drawn from the given facts, then the question of negligence must be determined from all the surrounding circumstances. The question of negligence then becomes one of mingled law and fact and must be determined by the jury. *Tabler v. Railroad*, 93 Mo. 80 ; Shear. & Redf. on Neg., sec. 11. The present case is peculiarly one where the question of negligence on the part of the section-men and of contributory negligence on the part of the deceased should be determined in the light of all of the surroundings. These observations are enough to show that the court did not err in refusing to give certain instructions asked by the defendant. Indeed, some of the instructions given at the request of defendant should have been refused.

4.   The next contention is that the first instruction for the plaintiff and the seventh and eighth for the defendant are inconsistent. By the first the jury were required to find that it was necessary for Barry to go upon the main track in order to get the signals, and that it was his duty so to do, under the circumstances, and it then proceeds to state, and that, "without fault or negligence on his part, he was run upon and fatally injured by a hand-car run and operated by defendant's agents and servants on its railroad without notice to or knowledge by the deceased and that such hand-car was run without lights or other signals of approach at a rapid rate of speed, and that such running of the hand-car was, considering the time, place and circumstances, negligent, careless and dangerous, and that such hand-car was so run under the orders, direction and control of defendant's section-boss * * * then the finding should be for plaintiff."

Defendant's seventh and eighth instructions are in these words:

"7.   There is no evidence tending to show that the hand-car mentioned in proof was being run at a dangerous or unlawful rate of speed at the time that Barry was injured.

"8.   The court instructs the jury that the defendant was not required to carry a light upon said hand-car, and was guilty of no negligence in failing to provide said car with such light."

The jury returned certain interrogatories, submitted to them at the request of defendant, which, with the answers thereto, are in these words :

"Q.   Was Barry standing between the rails facing and looking west at the time he was struck and injured by the hand-car ?   A.   Yes.

"Q.   Did the section-foreman, as his car was approaching, or while it was passing the depot, look along the track and see that it was clear from obstructions up as far as the tool-box ?   A.   No.

"Q.   If any steam was escaping, did the escaping steam obstruct or prevent the men on the hand-car from seeing Barry as soon as they would have seen him but for the steam ?   A.   If they had been looking they would have seen him before the steam obstructed the view.

"Q.   Was there any steam escaping from said engine ?   A.   There was when train moved.

"Q.   Was it escaping in such a volume as to obstruct the view of persons looking from the depot westward along the track ?   A.   Yes."

The defendant's seventh instruction should have been refused.   Enough has been said to show that the jury, in determining the question of negligence on the part of the section-men, had a right to take into consideration the speed of the hand-car ; for it was their duty to conform the speed of their car to the existing circumstances.   Of course the fact that this instruction is too favorable to the defendant does not furnish a full and

complete answer to the objection that the instructions are inconsistent. It will be observed that the plaintiff's instruction does not predicate a recovery on the ground alone that the hand-car was opera ted without lights or other signals and at a rapid rate of speed ; but the jury are required to find that such running was careless and negligent, considering the time, place and circumstances. Thus the real question in the case is fairly and properly submitted to the jury. The jury must have found that deceased was without fault, and that these section-men were negligent. The special findings show that they could have seen Barry before the steam began to escape had they or any of them been on the constant watch of the track in advance of their car. If we concede that the speed of the car and want of lights do not alone furnish sufficient facts to justify the verdict, still the general and special findings are supported by abundant evidence. The plaintiff's instruction is general, and submits the question of negligence to the jury on all the facts in evidence, while the seventh and eighth given at the request of the defendant are special, and they seek to eliminate some of the evidence from the case. While there is a seeming inconsistency in these instructions still the judgment ought not to be reversed. If this were a close case on the evidence we should feel in duty bound to order a new trial ; but taking into account all of the evidence it is clear that these section-men were guilty of inexcusable negligence and that their negligence caused the death of Barry.

The judgment is so manifestly for the right part that it ought to be and is affirmed. SHERWOOD, J., absent ; BARCLAY, J., concurs in the result, the other judges concur.