# LESTER BROCK v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

In Banc, November 25, 1924.

1. **INTERSTATE COMMERCE: Work Interstate in Character: Dependent Upon Own Peculiar Facts.** To be within the terms of the Federal Employers' Liability Act the employee of an interstate railway must at the time of his injury be engaged in work interstate in character, or so nearly related to interstate traffic as to be practically a part thereof; but the application of this general rule turns upon the facts of each particular case.

2. ————: ————: **Repairer of Interstate Telegraph Line: Going to Well for Water: Related to Employment.** A telegraph-repair crew slept and took their meals in bunk cars provided by defendant and kept standing on a switch track. To supply the men with water the defendant provided a water-tank car, but the water had become stagnant and unfit for use, and there was testimony that the foreman had instructed them not to use it, but to get water from a well across the tracks. At the noon hour, upon returning from his repair work to the bunk car for his dinner, plaintiff took a bucket and started across the track towards the well. A freight train, east-bound, was rapidly approaching on the main-line track, and he paused on the middle track to permit it to pass, and a motor car, rapidly moving westward on the middle track, struck him. It is conceded that plaintiff was engaged in interstate commerce while at work in repairing the interstate telegraph line, but it is contended that, in going for the bucket of water and at the particular time he was injured, he did not bear a relation to defendant that gave to his work an interstate character, and that he was not engaged in work related to interstate traffic. He worked at repairing the telegraph lines eight hours a day, from eight to twelve, and one to five, and was paid by the hour, and received no compensation for the noon hour. He took his meals in the bunk car at the instance of defendant, regularly and continuously, as a necessary part of the conditions of his employment and in furtherance of defendant's method of keeping the employees continuously at hand. *Held*, that the getting of his noonday meal at the bunk car cannot be held to be a severance of the relation, but was a required and regular incident to it, and the getting of water, as a necessary and usual part of the meal and of the preparation for it, was likewise an incident which arose out of the conditions produced or allowed by defendant, and therefore it cannot be held, as a matter of law, that these facts did not bring the case within the terms of the Federal Employers' Liability Act, but it was for the jury, under

Brock v. Railway Co.

proper instructions, to determine whether at the particular instant he was injured the work in which he was engaged was interstate in character, or bore such necessary relation to interstate traffic as to make it part thereof.

3. **NEGLIGENCE: Lineman on Track: Struck by Motor Car: Assumption of Risk.** A lineman assumes the risks ordinarily incident to the use of the railroad tracks within the scope of his employment, or if they are made unsafe by the company's negligence of which he has full knowledge and he continues to use them thereafter he likewise assumes the risk; but he does not assume the added risk produced by the company's unusual and unexpected acts of negligence. Where he had obtained a bucket at the bunk car to which he had gone for his noonday meal and started across the tracks to get water from a well; a freight train was rapidly approaching from the west on the main-line track, and he paused on the middle track to permit it to pass; while standing on the middle track a motor car from the east struck and injured him; and there was evidence that the motorman of the motor car saw him as he was climbing out of the bunk car with the bucket; that the motor car was running fifteen miles per hour, when it was customary to run five miles per hour when passing the bunk cars; that it was run without a given signal or a lookout; that it should not have been run on the middle track between the bunk cars and the rapidly moving train; and that he did not know that the motor car had been sent eastward and therefore was not expecting it, the court cannot say, as a matter of law, that he assumed the risk of being struck by the motor car, but the question was for the jury to determine, under proper instructions.

4. ————: ————: ————: ————: **Instruction: Within Scope of Employment: Personal Comfort.** If the employee is within the scope of his employment in eating his noonday meal or going for a bucket of water as an incident to and in preparation for the meal, the fact that the eating of the meal and the going for the water are for his personal use and comfort does not take him out of the scope of that employment; and an instruction telling the jury that if they find that at the time he was injured "plaintiff was not engaged in performing any duty owing by him in his general employment and was at the time going after water for his own personal use and comfort" they must find for defendant, would submit a question of law, and would leave to the jury to say whether plaintiff, in returning for his meal and going for the water, was within the scope of his employment, and was properly refused. Particularly was it not error to refuse the instruction where, upon defendant's objection, plaintiff was not permitted to testify directly whether the getting of his dinner was a part of his duties or whether going

after the water was a part of his duties or a personal errand, on the ground that, whether he was or not, was a question of law; and the court gave an instruction requiring the jury to find, as a condition of recovery by plaintiff, that he was, at the time of his injury, engaged in interstate commerce, and employed in that character of work or work incidental thereto, and that if he was engaged in his private concerns he could not recover.

5. ———: Excessive Verdict: Twenty Thousand Dollars. Plaintiff was twenty years of age, more than six feet high, and prior to his injuries had been strong and in good health, and capable of performing heavy manual labor. Being struck by a rapidly moving motor car, he was taken to a hospital, where he remained for sixteen days, and was then taken to his home; he received several wounds upon the head, extending through the scalp tissue, leaving large scars, but no fracture of the skull bones; a cut three inches long in the right forearm was sewed up and had healed; his back and neck were wrenched; no bones of the back were broken, but there were injuries, which left scars, and resulted in marked promicences and corresponding depressions of the spinous process at the fourth and ninth dorsal vertebrae, upon which pressure still caused pain at the time of the trial; there was a fracture of the neck of the scapula of the left shoulder, and a breaking down and displacement of the bony process in that shoulder joint, and this is permanent, and as a result he cannot raise his left arm above a horizontal position, and there is a marked enlargement on the left side of the neck viewed from the back; there have been a shrinking and partial atrophy of the left arm and hand; the little finger and the two middle fingers of the left hand are without sensation on their upper sides, and with this hand he cannot grasp or carry any heavy object; he has been unable to work longer than a few minutes without becoming dizzy, and at times falling unconscious; he cannot use an axe or spade without becoming dizzy and the experts testified this dizziness and falling were indications of traumatic epilepsy, resulting from concussion and injury to the brain, which might have been received when he was struck by the motor car; he continues to suffer pain, is nervous, unable to sleep normally, has a tendency to be drowsy, and is mentally slow to respond. *Held*, that a verdict for twenty thousand dollars is too large, and the judgment is affirmed on condition that he remit five thousand dollars as of the date of the verdict.

Headnotes 1 and 2: **Commerce**, 12 C. J. pars. 53, 55. Headnotes 2 to 4: **Master and Servant**: 2, 26 Cyc. 1459; 3, 26 Cyc. 1189, 1191; 4, 26 Cyc. 1242, 1510. Headnote 5: **Damages**, 17 C. J. par. 408.

Appeal from Clinton Circuit Court.—*Hon. A. M. Tibbels,* Judge.

AFFIRMED (*upon condition*).

*Luther Burns* and *John E. Dolman* for appellant.

(1)  The court erred in refusing to instruct the jury to find for the defendant as requested, for the reason that in going for a bucket of water with which to prepare himself for his meal at the time of the injury complained of, the plaintiff was not engaged in performing any duty owing the defendant, nor any work within the scope of his duties, nor was he engaged in interstate transportation or in work so closely related to it as to be practically a part of it.  Industrial Acc. Comm. v. Davis, 259 U. S. 182, 66 L. Ed. 888; Shanks v. Delaware Ry., 239 U. S. 556, 60 L. Ed. 436; C., B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 60 L. Ed.  941; Southern Pac. Co. v. Industrial Accident Comm., 251 U. S. 259, 64 L. Ed. 258; Pederson v. Delaware Ry., 229 U. S. 146; New York Central Ry. v. White, 243 U. S. 188, 61 L. Ed. 667; Bishop v. Delano, 265 Fed. 263, 254 U. S. 632, 65 L. Ed. 41; I. C. Ry. Co. v. Behrens, 233 U. S. 473; N. Y. Cent. Ry. v. Carr, 238 U. S. 260, 59 L. Ed. 1288; Erie Ry. Co. v. Welsh, 242 U. S. 303, 61 L. Ed. 319. Plaintiff went for water for his own individual purposes, and therefore cannot recover.  Padgett v. Seaboard Air Line, 236 U. S. 668, 58 L. Ed. 777.  Conceding that plaintiff was employed in interstate commerce when engaged in setting telegraph poles, he was not engaged within the scope of those duties or in any work incidental thereto when injured.  Elliott v. Payne, 239 S. W. 851; Barry v. Hannibal Ry. Co., 98 Mo. 70; Williams v. Schaff, 222 S. W. 412, 416; Pelloco v. Railway, 190 N. Y. Supp. 867; Rigley v. Wabash Ry., 204 S. W. 737; Marshall v. U. Ry. Co., 184 S. W. 159; Burnstead v. Mo. Pac. Ry. Co., 99 Kan. 589; Miller v. Ry. Co., 180 Mo. App. 371; Bishop

v. Delano, 265 Fed. 263. And, if he has any cause of action, it is under the Kansas Workmen's Compensation Act, which this court has no authority to enforce. Osagera v. Schaff, 240 S. W. 124; Mitchell v. Smelting Co., 215 S. W. 506. (2) The court erred in refusing to instruct the jury that there was no duty resting upon defendant to look out for the lineman upon its tracks, including plaintiff. There being no evidence that plaintiff was actually seen by defendant's servants in time to stop the car in question before striking him, plaintiff voluntarily assumed the risk of being struck and injured and cannot recover. Eashall v. Ry. Co., 249 Mo. 509; Gabal v. Ry. Co., 251 Mo. 257; Tuttle v. Detroit Ry. Co., 122 U. S. 194, 30 L. Ed. 1114; Northern Pac. Ry. v. Hambly, 154 U. S. 349, 357. (3) The verdict of the jury is so grossly excessive as to conclusively show it to be the result of passion and prejudice and not the result of a fair consideration of the evidence. Justice therefore demands another trial on that issue before a fair and impartial jury. Harper v. Railroad Co., 186 Mo. App. 296; Partello v. Railroad, 217 Mo. 645; Gibney v. Transit Co., 204 Mo. 704.

*R. H. Musser, Platt Hubbell* and *George H. Hubbell* for respondent.

(1) Respondent and the appellant were engaged in interstate commerce at the time of the injury—repairing a telegraph line which had been used, and which was then and there in use in moving interstate trains is interstate commerce within the meaning of the act of Congress. Coal & Coke Ry. Co. v. Deal, 231 Fed. 604, 145 C. C. A. 490, 215 Fed. 285, 232 Fed. 1020, 245 U. S. 681, 62 L. Ed. 544; Yardé v. Hines, 209 Mo. App. 547; Crecelius v. Milwaukee Ry. Co., 284 Mo. 26, 274 Mo. 671; Williams v. Schaff, 282 Mo. 497; 1 Rob. Fed. Lia. Carr. sec. 494; So. Pac. Co. v. Indust. Acc. Com., 251 U. S. 259; Ross v. Sheldon, 176 Iowa, 618; Collins v. Mich. Cent.

Railroad Co., 193 Mich. 303; Brier v. Ry. Co., 183 Iowa, 212; Erie Railroad Co. v. Collins, 253 U. S. 77; North Carolina Railroad Co. v. Zachary, 232 U. S. 248; Behncke v. Min. Co., 189 Mo. App. 639; Paras v. Railroad Co., 183 Iowa, 1212; Louisville Railroad Co. v. Walker's Admr., 162 Ky. 209; Erie Railroad Co. v. Szary, 253 U. S. 86; Thomas v. Wis. Cent. Ry. Co., 108 Minn. 485; Manchester St. Ry. Co. v. Barrett, 265 Fed 557; Clem v. Chalmers Motor Co., 178 Mich. 340; P. B. & W. R. Co. v. Smith, 250 U. S. 101, 63 L. Ed. 869; So. Ry. Co. v. McGuin, 240 Fed. 649, 61 L. Ed. 1373, 244 U. S. 654; Director General v. Bennett, 268 Fed. 767; Knorr v. Cent. Railroad, 268 Pa. 179, 254 U. S. 644.    (2)    Appellant's own evidence showed a legal duty to the respondent—that legal duty was violated by overt acts of negligence—there was no assumption of risk in the case —respondent's instruction number four was more favorable to appellant than the law permits—appellant only submitted the theory of assumption of risk as predicated in appellant's instruction numbered six without any evidence to support that theory.    Chesapeake & O. Railroad Co. v. DeAtley, 241 U. S. 310; Yazoo & Miss. Valley Ry. Co. v. Wright, 235 U. S. 376; Chesapeake & O. Railroad Co. v. Proffitt, 241 U. S. 462; Erie Railroad Co. v. Purucker, 244 U. S. 320, 61 L. Ed. 1166; McGovern v. Phil. & Railroad Co., 235 U. S. 389; C. R. I. & P. Ry. Co. v. Ward, 252 U. S. 18; So. Ry. Co. v. McGuin, 240 Fed. 649, 244 U. S. 654, 61 L. Ed. 1373; Adams v. Railroad Co., 287 Mo. 535; Pryor v. Williams, 254 U. S. 43. (3)    The verdict of twenty thousand dollars in this case is not excessive.    Hughes v. Savings Assn., 115 N. Y. Supp. 320; 17 C. J. 1096, 1097, 1098, 1101, 1114; Smith v. Whittier, 95 Cal. 279; Sabine Railroad Co. v. Ewing, 7 Tex. Civ. App. 8; International Railroad Co. v. Brazzil, 78 Tex. 314; Dickinson v. McBride, 127 Ark. 555; Carr v. Am. Loco. Co., 23 Ann. Cas. 1912 B, 131, 31 R. I. 234; Ruck v. Brewery Co., 26 Ann. Cas. 1913 A, 1373, 148 Wis. 222;    St. Louis Railroad Co. v. Webster, 27 Ann. Cas. 1913 B, 141, 99 Ark. 265.

LINDSAY, C.—This suit was brought by plaintiff under the Federal Employers' Liability Act, to recover damages for injuries sustained by him through being struck by a motor car operated by a section crew of the defendant, and alleged to have been operated negligently. The injury occurred on August 12, 1920, at Maple Hill, in Kansas. The plaintiff was and is a resident of Missouri. At that time the defendant was engaged in repairing the telegraph line located upon the right of way of its railroad running through Maple Hill. Along with the telegraph wires, fifteen in all, composing said line, there was a telephone wire. Both the telephone wire, and the telegraph wires were used by the defendant in controlling the operation of its freight and passenger trains in interstate, as well as intrastate traffic. The repair work was carried on in such a manner as not to interrupt the cotemporaneous use of the wires in the control of train operations.

The plaintiff had been in the employment of defendant for about three weeks. His duties consisted in digging holes, and in assisting in the setting or re-setting of poles, the adjustment of cross-arms, and the like work. The work of repairing the line was in charge of a foreman, and there were, in all, about sixteen men who constituted what was designated as the telegraph-repair crew, and were engaged in this repair work. These men slept and took their meals in cars provided by the defendant. The tracks of the defendant at Maple Hill run almost east and west. The bunk cars, and other cars, appurtenant to the uses of the telegraph-repair crew, stood upon the southermost track, spoken of as the stock-yards track. Near, and north of this, was a passing track. North of this passing or middle track was the main-line track. The depot is north of these tracks, and was about ninety or one-hundred feet east of the bunk car used by plaintiff and others of the crew to which he belonged. At a point about one-hundred-fifty feet west of where the bunk cars stood, a public road crossed the railroad tracks. There were five bunk cars, and eight other cars, including a water-tank car, and cars

for tools and food supplies for this crew of men. All of the town of Maple Hill was north of the tracks; none of it to the south. The plaintiff worked eight hours a day at seventy-five cents an hour. His work began at eight o'clock in the forenoon, continued until noon, was resumed at one o'clock, and ended at five o'clock in the afternoon. His injuries were received during the noon hour. He had returned from his work, to the bunk car occupied by him and five other men, for the purpose of eating his noonday meal in the car adjacent, provided by the defendant for that purpose. Finding that the water in his car had been used up by the others, the plaintiff took a bucket and started to bring water from a well, which was north of the tracks of defendant, and in a northwest direction from his bunk car. As he descended from the bunk car he was facing south, his back toward the middle or passing track. It was shown that the door in use was on the north side of the car; that there were no steps leading down; but there was a hand-hold at the side of the door, and, about thirty inches below the base of the opening, there was an iron stirrup as a support for the foot in ascending or descending. At about this time a freight train was approaching rapidly, east-bound, upon the main-line track. The plaintiff, on reaching the ground, turned westward a few steps, and stepped upon the middle or passing track, facing northwest, and pausing to look and await the passing of the freight train he was struck by a Mudge motor car operated by the section crew of defendant, which was moving west upon the middle or passing track.

The testimony of the motorman of the Mudge motor car was that he saw the plaintiff with the bucket on his arm, or in his hand, as he was thus descending from the door of the bunk car to the ground and as he let loose of the hand-hold and faced toward the north, but did not see plaintiff after that until the motor car struck him. There was testimony that the motorman thought, or said he thought, the plaintiff would look back, or he would have stopped the motor car.

It appears that in addition to a crew of section men at Maple Hill, the defendant had there also a crew of signal men. On that morning the signal crew had been at work at a point east of Maple Hill, and the section crew at work at a point west of the town, but, before noon, the foreman of the section crew had sent a part of his men with the motor car to assist the signal crew, and it was upon the return of the motor car with men from both crews, a little after twelve o'clock of that day, when the plaintiff's injury occurred. The plaintiff had a verdict for $20,000. Other facts and details of the testimony pertinent to the issues made will be noticed later, as occasion requires.

The petition is long. The allegations set forth very fully the nature of plaintiff's employment, the conditions of the work in which he was engaged, the circumstances under which plaintiff and others were accustomed to cross the tracks to bring water for their use and otherwise, and the physical objects located or moving in and about the scene of the injury. It need not be set out, nor is extensive reference to it necessary. The particular allegations of negligence were: that the Mudge motor car was run at an excessive and negligent rate of speed under the circumstances (along the track near the bunk cars); that it was negligence to run said motor car at that time on the passing track, between the bunk cars, and the rapidly moving freight train on the main track; that defendant's employees on the motor car negligently failed to exercise reasonable care to discover plaintiff on the passing track, and negligently failed to exercise reasonable care for his safety after discovering him; that defendant negligently failed to provide and maintain for plaintiff a reasonably safe place to work, and a reasonably safe method of egress and ingress from and to the bunk car; that defendant negligently failed to give any notice, warning or signal of the approach or movement of the motor car. The defendant pleaded the provisions of the Workmen's Compensation Act of the State of Kansas,

and certain facts alleged as bringing the case within the provisions of the Kansas act, and as not within the Federal act; pleaded the carelessness and negligence of plaintiff as one of the direct and sole contributing causes to his injury, and also a general denial.

The defendant assigns as errors: (1) the refusal of the court to give its instruction in the nature of a demurrer to the evidence, offered at the close of the case; (2) refusal of the court to give defendant's offered instruction numbered 4, which would have told the jury that if plaintiff, at the time of his injury, was not engaged in performing any duty owing by him in his general employment, but was engaged in going after water for his own personal use, the verdict must be for defendant; (3) (a contention within the refused peremptory instruction) that there was no duty resting upon defendant to look out for linemen, including plaintiff, upon its tracks, and this also upon the theory that there was no evidence that plaintiff was actually seen by defendant's servants in time to stop the motor car, and that plaintiff knew the conditions existing, and assumed the risk of being struck and injured; (4) that the verdict is grossly excessive, and the result of passion and prejudice.

From the foregoing, and from express statements made in the reply brief of defendant, numerous questions have been eliminated as live questions necessary to be considered. It is conceded that the question of contributory negligence of plaintiff is not raised here and is settled by the verdict. No serious question is raised as to the interstate character of plaintiff's employment *while* repairing defendant's line which was used in the movement of both interstate and intrastate trains. Beyond that, the question of defendant's negligence in operating its motor car is not raised, nor question of failure to furnish plaintiff a safe place in which to sleep and to eat. The paramount and interesting question raised is, whether the plaintiff at the particular time when he received his injuries bore such relation to the

defendant, and to the work in which he was employed, as brought his case within the terms of the Federal Employers' Liability Act. Further, if it be granted that plaintiff, at the time of his injury, bore the required relation to interstate traffic, yet, defendant urges that he assumed the risks (known to him) of the use of the bunk car, and of the accustomed daily movements of the Mudge motor car.

The primary question then, is the relation of the plaintiff and of what he was doing, at the time he was injured, to the defendant, and to the work he was employed to do by the defendant. The bunk cars wherein the plaintiff and others slept, belonged to defendant, and were on the property of defendant, and were the center of the movements of these men. The purpose of furnishing these cars, and having the men sleep and eat in them was, "to keep the men all together, so they would be there handy to the work." The cars, food and supplies generally were furnished by the defendant, or under its instructions and management. The men paid for their meals. The occasion and the circumstances under which plaintiff undertook to go after water are matters of importance in view of the issue presented. There does not appear to be any conflict in the testimony as to the fact that plaintiff and at least one other man from his car were in the habit of bringing water from the well. Upon certain other features the testimony varies somewhat. As a part of the outfit there was a water-tank car. The plaintiff testified that the tank consisted of an engine coal-tender. The tank had been filled at Topeka, and as the territory tends to show, seventeen days or more before the day on which plaintiff was injured. The plaintiff testified that the water in the tank was not fit to drink; that one of the men of the crew had been made ill by drinking it; that the foreman of the crew said not to use it, but to get water from the well at the hotel, or from the well near the grain elevator. Both of these wells were across the tracks, the one to the northwest,

the other to the northeast.   Plaintiff's testimony was that the men did go to these wells to get water; that they took turns bringing it; that in going for water or to a toilet closet, they went across the tracks from wherever they were when they climbed out of the bunk cars.

One of the men, a witness for plaintiff, testified that the water in the tank had become stagnant, and unfit to drink, and that the valve in the tank had been opened and the water allowed to run out, and that there was no water in the tank; that this was done after a man had been made sick by drinking that water, and had been sent to the hospital.   But, this witness, on cross-examination, testified that the pollution of the water in the tank, so that it was drawn off, might have taken place at Willard, a short time before coming to Maple Hill   There was testimony for defendant that there was water in the tank, and testimony tending to show that men had been using it in the time prior to the accident to plaintiff; but there is substantial testimony that the water in the tank was, and had been, unfit for use, and that the men had been procuring water from the wells across the tracks, and doing so upon the suggestion or instruction of the foreman.   There was testimony to warrant a finding that there was good reason, and indeed necessity, that plaintiff and others similarly situated, living in the bunk cars, should go to the wells mentioned for water.

I.   The theory of the defendant is that the living of plaintiff in the bunk car was a matter of option or choice, and his going after water at the particular

Interstate Work.

time, an act purely personal, unrelated to his employment, or not incidental thereto in such sense that the conditions of his employment extended over or attached to that time and that act.   It appears that this telegraph crew, at intervals, was located temporarily at various small towns or stations as the work progressed, and the employment of plaintiff and others clearly contemplated, and brought to pass the condition

305 Mo.—33.

of living in the bunk cars provided by defendant upon its tracks, as a part of the method of handling the work to be done.

The defendant in support of its contention that plaintiff in going for water to prepare himself for his meal was not engaged in interstate transportation, nor in any work for defendant, nor in any duty so closely related to his work as to be practically a part of it, cites numerous decisions of the Supreme Court of the United States, which should be noticed. These in respect of their respective controlling elements fall into a few classes. In Industrial Accident Commission v. Davis, 259 U. S. 182, the petitioner received his injuries in the general repair shops of the railway company, while repairing an engine which had been used in interstate commerce, but which had been in the shops for several weeks, and at the time of the injury was in a dismantled condition, and was not intended to be again used in interstate commerce for a month. The case turned adversely to the petitioner upon consideration of the fact that there had been a definite withdrawal of the engine for general repairs and for so long a time as to constitute a placement of it in a new relation. "It was not interrupted in an interstate haul to be re-paired and go on" (l. c. 188). It was held that in such cases the purpose and degree of withdrawal, and the length of time were necessary to be considered, and the answer to the question of separation of the subject of inquiry from interstate relation must depend upon the facts in the particular case. In Shanks v. Delaware, L. & W. Co., 239 U. S. 556, the plaintiff was employed in the machine shop of the railway company. His work usually was in the repair of engines, "but on the day of the injury he was engaged solely in taking down and putting into a new location an overhead countershaft— a heavy shop fixture through which power was communicated to some machinery used in the repair work. . . What he was doing was altering the location of a fixture in a machine shop." This was held to be too re-

mote from interstate transportation to be practically a
part of it.

In C. B. & Q. Ry. Co. v. Harrington, 241 U. S. 177,
the employee, a member of a switching crew, was killed
while switching coal which belonged to the defendant,
which had been upon a storage track for a week, to a
coal shed of defendant where it was to be placed in bins
or chutes as supplies for engines, used in both intrastate
and interstate operations. This was held not to be in-
terstate transportation. "This was nothing more than
the putting of the coal supply in a convenient place from
which it could be taken as required for use" (l. c. 180).
In Southern Pacific Co. v. Industrial Accident Commis-
sion, 251 U. S. 259, the deceased at the time he was killed
was actually engaged in wiping the insulators of one of
the cables of an interstate electric railway, a work neces-
sary to keep the lines in serviceable condition. It was
held that the work was directly and immediately connect-
ed with interstate transportation. A similar case was
Pederson v. Delaware, Lack. & West. Ry., 229 U. S. 146,
where the plaintiff was struck by a train while carrying
bolts to be used in repairing a bridge of the defendant,
which bridge was then in use as a part of defendant's
line and road-bed in interstate transportation. The sa-
lient point in the case was that the plaintiff was engaged
in the repair of an instrumentality then in use in inter-
state traffic. The distinction between repair work upon
an instrumentality in use, and new construction upon an
instrumentality designed for use in the future, is also
drawn in New York Central Railroad Co. v. White, 243 U.
S. 188, where the plaintiff was injured during the erec-
tion of a new railway station, not then in use, but in-
tended to be used in interstate traffic. In Illinois Central
Railroad Co. v. Behrens, 233 U. S. 473, the plaintiff was
injured while engaged in moving intrastate cars from
one point to another, in the same city. It was shown that
upon completion of that movement his next duty would
have been in the movement of interstate cars. It was

held that what was expected after the completion of the interstate movement was immaterial, and did not give interstate character to the movement in which he was engaged when he was injured. A similar case, also cited, is Erie Railroad Co. v. Welsh, 242 U. S. 303. In that case a yard conductor of an interstate railway, returning from a movement of intrastate cars, was injured in stepping off of an engine. His purpose was to report to the yard master. It was shown that had he not been injured, the next duty to be required of him would have been to move certain cars in interstate traffic. It was held that at the time of his injury he was not engaged in interstate commerce. It was said, at page 306: "The true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act." But in New York Cent. Ry. v. Carr, 238 U. S. 260, the plaintiff was held to be engaged in interstate commerce. In that case a brakeman was injured while setting a brake when an engine was moving an intrastate car from a train containing also interstate cars. When the task at which the plaintiff was injured was completed, the engine was next to move certain interstate cars of the same train. The setting of the brake was held a necessary thing preparatory to the movement of the engine to take up the interstate cars. Yet another case cited is Seaboard Air Line v. Padgett, 236 U. S. 668, upon writ of error to the Supreme Court of South Carolina (83 S. E. 633). The facts appear chiefly in the opinion of the state court where a verdict for the plaintiff, an administratrix, was sustained, which was affirmed upon writ of error. The facts may be stated in small compass. The deceased, an engineer had brought his engine into the roundhouse at 10:30 at night upon return from a run. The engine was then taken for some slight repairs. The deceased was due to take his engine out upon an interstate run, at 6:10 on the following

morning. Finding no room at the usual lodging place provided by the defendant outside the roundhouse, he returned to the roundhouse and went to sleep in an engine cab. This engine being moved at 4:30 in the morning, he was then awakened, at a place outside of the roundhouse, and inquired where his own engine had been placed, and being told, went away toward the roundhouse, and was not seen alive afterward. · After the time when he should have started on his run he was found dead in an unguarded and unlighted pit in the roundhouse. His engine had been standing with the step of the engine over the pit. It was insisted that the deceased was not engaged in interstate commerce, was a trespasser in the roundhouse, was guilty of contributory negligence, and had assumed the risk from the open and unlighted pit, but there was no testimony that he knew anything of the open pit. It was held that under the circumstances shown the jury might infer that in the interim he had gone to inspect the engine as to the repairs having been made, preliminary to going out with the engine, and was engaged at the time of his death in interstate commerce (83 S. E. 634).

These cases establish the rule that the employee injured while engaged in the work of repairing an instrumentality then in use in interstate transportation is within the terms of the act. That question, as has been said, is not pressed here. These cases further are merely illustrations of the rule that the employee to be within the terms of the act, must be engaged in work that is interstate in character or, in something so nearly related thereto as to be practically a part of it. The application of this general rule must be made to the facts in the particular case. The Supreme Court of the United States said in the very recent case of Cudahy Packing Co. v. Parramore, 44 Sup. Ct. Rep., page 154: ''Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No

exact formula can be laid down which will automatically solve every case.''

Several Missouri cases are cited by defendant in support of the contention that the plaintiff, if it be conceded that he was employed in interstate commerce when he was engaged in the repair work, was not engaged within the scope of his duties, or in any work incidental thereto, when injured. Our attention is called to Elliott v. Payne, 293 Mo. 581. In that case a fireman stepped from a moving engine to a depot platform, where by reason of a defect, ice had accumulated, and he slipped, and fell under the wheels and was killed. The first of the two salient points in that case, decided adversely to plaintiff, has no appreciable bearing upon the question here. The platform as the object which brought about the injury was not a structure, appliance or other species of equipment such as came within the terms of the act. The other point was that there was no evidence tending to show that the act of the fireman was in any way related to his work. The court, speaking through Judge GRAVES, said, at page 596: ''There isn't a word of direct testimony as to why or for what purpose the deceased left his moving engine.'' Without some showing of a purpose related to his employment coupling the act with his work, there could be no recovery. In the case at bar the purpose of the plaintiff was made clear. The question is, the relation of that known purpose and corresponding act to plaintiff's work for the defendant.

The case of Barry v. Railroad, 98 Mo. 62, is cited. In that case an engineer, contrary to the general rule, but in an emergency, got off of his engine, and stood upon the main-line track to get signals from a brakeman, and while directing the fireman to move the engine, was run down by a section crew running a hand-car at a high speed. Upon a showing that there was a usage of long standing among the employees, presumably known to the officers, to allow the fireman to make short moves with the engine, it was held that Barry was not guilty of con-

tributory negligence barring a recovery. Upon the facts
stated, and the holding, that decision is not regarded as
giving any substantial support to defendant's contention
here. The case of Barry is discussed in the opinion in
Elliott v. Payne, supra, and in the course of the opinion
in Elliott's case, it was said, at page 597: "There may
be incidental cessations from the work being done by
the servant, without loss of a right to recover, if injury
happens to the servant whilst upon the premises of the
master, and through the negligence of the master. These
cessations must be for the purposes which are fairly in
contemplation of the parties, when the contract was made.
Absence from the place of business for the servant's own
individual purposes, defeats his right of action." The
court then quoted at length from the opinion in Ingram's
Admr. v. Rutland Railroad Co., 89 Vt. 1. c 281, wherein
the general rule and the exceptions were stated, and many
authorities and instances were collated. Disposing of
the case of Elliott, the court said, at page 599: "The
sole thing upon which plaintiff's recovery of $25,000 can
be sustained is that the jury could infer that deceased
left his place of duty to get a lunch, because trainmen
frequently got lunches at Green Leaf. A verdict can-
not stand upon such a frail structure. It would be the
merest guess as to his purpose."

The decision in Williams v. Schaff, 282 Mo. 497,
is cited in the briefs. In that case the petition counted
upon the Liability Act, and also upon common-law lia-
bility. There was a recovery upon the former, in the
trial court. In that case the plaintiff was engaged in
work in the construction of a new semaphore, at Savan-
nah, and because a new construction and not one in use,
his employment was held to be not in interstate com-
merce. Upon the question of the relation existing be-
tween the plaintiff and the defendant, and the work being
done at the time the plaintiff was injured, there is much
discussion in the opinion. There, at the close of the
day's work, the plaintiff and a foreman, upon represen-

tation of the foreman that there was no lodging place to be had in Savannah, took a train and went to McAlester, where they spent the night. In attempting to board a freight train of the defendant at McAlester the next morning, to return to work, but, at a time already later than seven o'clock (the time when plaintiff was expected to go to work), the plaintiff was injured. The view of the majority upon the question of the relation existing between the plaintiff and defendant in respect of his duty is stated, at page 509: "In view of the evidence to prove there was no place in Savannah where Hughes and plaintiff could spend the night, we hold it was not shown beyond an inference to the contrary the parties were acting outside the scope of their duty to defendant when the accident happened." Upon this subject the majority opinion, written by Judge GOODE, held that the question was settled by the verdict. Upon this phase of the case there was a dissent by Judge GRAVES, based upon the opinion that the evidence as to the reason or necessity for the trip to McAlester was "entirely too shadowy to form the basis of liability," and that plaintiff was not about the master's business at the time of the injury. The decisions in Elliott v. Payne and Williams v. Schaff recognize the exceptions, and the circumstances or incidents under which the employee may and does remain within that relation, although at the particular time he is not engaged in the primary or immediate work which he is employed to do.

Myers v. C. B. & Q. Ry. Co., 296 Mo. 239 is cited. In that case it was held upon the facts, that the plaintiff, a section hand, had been engaged in work that was a part of interstate commerce, but in the afternoon, at the time he was burned and injured, he was not so engaged, even though upon the completion of the work he would have returned to the former character of work. This followed the conclusion reached in Illinois Central Railroad v. Behrens, 233 U. S. 473, and C. B. & Q. Railroad v. Harrington, 241 U. S. 177, heretofore mentioned, where

the actual work of the party injured was held to be, in some of his duties, a part of interstate commerce, and in others, a work having no relation thereto. In the case at bar the employment of plaintiff in the repair of the telegraph line was, as is virtually conceded, a part of interstate transportation, and that, and such things as might be incidental or related thereto, constituted his only employment. There was no separation of one kind from another. The cessation from actual work on the line, if incidental to the work in the forenoon, was in the same sense incidental to the work in the afternoon, was in the same sense incidental to the same kind of work, to be resumed in the afternoon. Other cases dealing more or less nearly with this and other phases of this case, are Erie Railroad Co. v. Winfield, 244 U. S. 170; Erie Railroad Co. v. Szary, 253 U. S. 86; Thomas v. Wisconsin Cent. Ry. Co., 108 Minn. 485, 23 L. R. A. (N. S.) 954; Yarde v. Hines, 209 Mo. App. 547; Crecelius v. Chicago, M. & St. P. Ry., 284 Mo. 26.

Much that is enlightening upon the immediate issue here is found in the recent decision, heretofore mentioned, in Cudahy Packing Co. v. Parramore, 44 Sup. Ct. Rep. 153. In that case the plaintiff's intestate was struck by an engine upon a public crossing of railroad tracks while he was riding to his work in an automobile driven by another. The accident occurred about seven minutes before the time when he would have gone to work. The place where he was struck was not on the premises of the defendant, but the railroad tracks were connected with the plant by switches. The court held that the accident arose out of his employment, that the railroad tracks were so connected with the plant that "in principle it was as though upon the actual premises of the employer," and by reason of the situation the deceased, in coming to his work, was on the tracks by the invitation of the defendant, and that the entry and departure from the premises was a necessary incident of the work, and contemplated as a part of the employment. Quoting

from an English decision, it was said: "An accident arises out of the employment where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although risk incidental to the employment may include a risk common to all mankind."

In the case at bar the plaintiff took his meals in the bunk car at the instance of the defendant. He did this regularly and continuously as a necessary part of the conditions of his employment, in furtherance of the method of defendant in keeping the employees conveniently at hand. The getting of the meal at the place and under the circumstances cannot be held to be a severance of the relation, but a required and regular incident to it. The getting of water, as a necessary and usual part of that meal and of the preparation for it, was an incident which arose out of conditions produced or allowed by the defendant. The fact that the plaintiff was paid by the hour for the hours he worked, and received no pay for the noon hour, does not of itself serve to sever wholly the relation during the time he was occupied in preparing for the meal to be taken at the place and in the period contemplated, and required under the arrangements which the employer provided. So long as, and to the extent that his movements at this time were confined to such acts as were a part of the routine prescribed, or pursued under the instruction of his superior, the relation incidental to his employment was not broken. The procuring of water, and the taking of the meal at the time and place under the circumstances, and under the method in force, were ancillary to the work to be done. The question was submitted to the jury under the instructions. The conclusion here is that it cannot be said, under the evidence, that as a matter of law the relation of the plaintiff to the defendant and to the work he was employed to do, was severed, or was so remote as to bar a recovery under the Employers' Liability Act. Upon this question, the particular unit by which the employee's compensation is measured, the hour, the number of

miles traveled, the day or the week, is not of controlling force. In either, exceptions arising out of the arrival at or departure from the place of employment, and cessations necessary, or incidental to the work, must be recognized. In this case the act of plaintiff in taking his meal at the place and under the conditions provided by defendant, and the acts incidental thereto, had relation to the work already done, and the work thereafter to be done, on that day. Upon the grounds and reasons hereinbefore discussed, the court did not err in refusing to take the case from the jury.

II. The defendant further urges that the demurrer to the evidence should have been sustained, assigning as a reason that there was no duty upon defendant to look out for the linemen upon its tracks, including plaintiff, and no evidence that plaintiff was actually
**Assumption of Risk.** seen by defendant's servants in time to stop the car before striking him, and that plaintiff voluntarily assumed the risk of being struck. Upon this it may be said that there was evidence that defendant's motorman saw the plaintiff as he was climbing out of the bunk car with the bucket. The evidence as to the speed of the motor car was conflicting, but there was evidence that it was at a negligent rate of speed, under the circumstances. There was evidence of instructions and custom to run the motor car at not more than five miles an hour when passing the bunk cars, and evidence tending to show that at the time plaintiff was struck it was moving at fifteen miles an hour. The motor car was being run upon the middle track between the line of bunk cars, and the rapidly moving freight train which was running eastward upon the main track. There was testimony from several witnesses that the motor car should not have been run between the bunk car and the moving train, and testimony tending to show that the motor car was run without a signal given or a lookout.

To have sustained the demurrer to the evidence upon the ground that plaintiff in attempting to cross where he did assumed the risk as a matter of law, would have been for the court to disregard some of the pertinent things in evidence. The plaintiff had seen the motor car in use at times during his employment. His testimony was that it usually came in on the main-line track. His testimony was that he did not know that on the morning of the accident, the foreman of the section crew, not going himself, had sent the motor car eastward of Maple Hill. The motor car appears to have been operated by two colored men in the absence of the foreman.

The testimony tended to show that the running of the motor car at the place, and in the manner in which it was done, was unusual and not expected. In considering the use of the tracks, as a place within the scope of plaintiff's employment, it must be said that he would assume the risks ordinarily incident thereto, and if the place was made unsafe by the negligence of the defendant in a respect of which the plaintiff had full knowledge, and he continued to use them thereafter, he would be held to have assumed the added risk also, but he would not be held to have assumed the added risk, the result of an unusual and unexpected act of negligence on the part of the defendant, of which he had no knowledge. This is in accord with what was said in Pope v. Terminal Railroad Assn., 254 S. W. l. c. 46, and following Seaboard Air Line v. Horton, 233 U. S. l. c. 504, 505: Chesapeake & O. Ry. Co. v. De Atley, 241 U. S. 310; Chesapeake & O. Ry. Co. v. Proffitt, 241 U. S. 462; Yazoo & Mississippi Railroad Co. v. Wright, 235 U. S. 376; Erie Railroad Co. v. Purucker, 244 U. S. 320. Upon the duty of defendant under the surroundings in which plaintiff and others were placed, reference is made to what was said in Crecelius v. C. M. & St. P. Ry., 284 Mo. l. c. 40-42.

The court could not say as a matter of law that plaintiff assumed the risk under the evidence. Under plaintiff's instruction numbered 4 the court submitted the

question of assumption of the risk fully, and in a manner as favorable as defendant had the right to ask; and under defendant's instruction numbered 6 the question was submitted upon the theory that if plaintiff without necessity of crossing the tracks chose an unnecessary and dangerous course to obtain water, and was injured, he must be held to have assumed the risk and could not recover. The defendant assigns error in the refusal of the court to give its instruction numbered 4 as follows:

"The court instructs the jury that if you find from the evidence that at the time of the injury complained of plaintiff had returned from his work for the purpose of eating his noonday meal, and at said time was not engaged in performing any duty owing by him in his general employment to said defendant, or that he was performing any duty incidental to said general employment; but, if you so find plaintiff, at the time of said injury complained of, was engaged in going after water for his own personal use and comfort, then plaintiff cannot recover, and your verdict will be for defendant."

It may be observed of this instruction, that, in respect of a finding that plaintiff "at said time [the time of eating his noonday meal] was not engaged in performing any duty owing by him in his general employment, or performing any duty incidental to said general employment," it submits a question of law of an ultimate character, rather than one of fact. The concluding part of the instruction contains the hypothesis of plaintiff "going after water for his own personal use and comfort," without more. But, if the employee is within the scope of his employment, the taking of water, or food, under the cases dealing with incidents of that kind, does not take him out of the scope of his employment merely because the water or food is for his own personal use and comfort. If the employee is within the scope of his employment, there is in such cases a merger of the person into the employee. The instruction would have left it to the jury to say as a matter of law whether the plaintiff, in return-

ing for his midday meal, was within the scope of his employment, and would have told the jury that if plaintiff went after water for his personal use and comfort, he could not recover, without a finding that going after water was not necessary or incidental to the work.

Upon the trial the plaintiff, upon defendant's objection, was not permitted to state directly whether he was going on a personal errand, or whether getting his dinner was a part of his duties, or whether going after water was a part of his duties, on the ground that whether he was, or not, was a question of law. The instruction called for a conclusion upon this and upon an insufficient summary of the evidence. Also, the questions raised by this instruction were included in the other instructions given for defendant, requiring the jury to find, as a condition of recovery by plaintiff, that he was, at the time of the injury, engaged in interstate commerce, and employed in that character of work, or in work incidental thereto; and under defendant's Instruction 8 the jury was told that if plaintiff was "engaged with his own private concerns at the time of said injury," he could not recover. For these reasons the refusal of this instruction is not regarded as reversible error.

III. There remains the contention that the verdict is excessive. The plaintiff was injured on August 12, 1920. He was then twenty years of age, and somewhat more than six feet in height, was shown to have been strong and in good health, and capable of performing heavy tasks in manual labor. After his removal from under the motor car, and some immediate relief given, he was taken to defendant's hospital at Topeka, where he remained sixteen days, and then was removed to his home. He received several wounds upon the head, extending through the scalp tissue, and leaving large scars, but no fracture of the skull was shown. There was a cut more than three inches in length in the right forearm, which had to be sewn up, but had healed.

Excessive Verdict.

His back and neck were wrenched. There was no fracture of bones of the back, but injuries were shown, as the result of which (at the time of the trial, April, 1922) there were scars, and marked prominence and corresponding depression of the spinous process, at the fourth and ninth dorsal vertebrae upon which pressure caused pain. It was shown that there was a fracture of the neck of the scapula of the left shoulder, and a breaking down and displacement of the bony process in that shoulder joint. This it was said was permanent. It was shown that as a result of this the plaintiff could not raise his left arm above a horizontal position, and there was a marked enlargement of the left side of the neck, as viewed from the back. It was shown that there had been a shrinking and partial atrophy of the left arm and hand, and that the little finger and two middle fingers of the left hand of plaintiff were without sensation on their upper side, to heat, or to being pricked with a pin, and that with this hand he could not grasp or carry any object of considerable weight. The testimony was that he had been unable to do any work for longer than a few moments without becoming dizzy, he would at times fall to the ground and be unconscious; that he could not use a spade or an axe without becoming dizzy within a few moments, and unable longer on that day to work. The testimony of physicians who had treated him was that his dizziness and falling down were indications of traumatic epilepsy which would result from concussion and injury of the brain, such as might have been received by him through being struck by the motor car. The testimony further was that he continued to suffer pain, was nervous, unable to sleep normally, had a tendency to be drowsy, and mentally was slow to respond.

Upon the trial, in the taking of testimony as to his injuries, the plaintiff was stripped to the waist. Certain X-ray pictures taken were also introduced, and an extensive examination had as to his physical condition. Full opportunity was given to the jury to ascertain the char-

acter of the injuries and their effect upon the plaintiff as tending permanently to disable him from manual labor. The evidence does not show he had undertaken or was seemingly adapted to work of a kind other than manual labor. Taking these matters and the age of plaintiff into consideration, the verdict is not regarded as being excessive in a degree requiring it to be set aside, or that a part of the amount recovered be remitted. The judgment should be affirmed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., in Division, is adopted as the opinion of Court in Banc, except as to the amount of the recovery. The court is of opinion that the judgment should be reduced to fifteen thousand dollars as of the date of the judgment and that plaintiff should remit the sum of five thousand dollars as of such date, within ten days from this date, in which event the reduced judgment will be affirmed; otherwise, the original judgment will be reversed and the cause remanded. All of the judges concur, except *Walker, J.,* absent.