### ATLANTIC COAST LINE R. CO. v. CRAVEN.

No. 6125.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1950.

Decided Nov. 9, 1950.

Collins Denny, Jr., Richmond, Va. (J. M. Townsend, Petersburg, Va., and Denny, Valentine & Davenport, Richmond, Va., on brief) for appellant.

J. Segar Gravatt, Blackstone, Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This civil action was brought in the District Court of the United States for the Eastern District of Virginia under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., hereinafter called the Act. The complaint alleged that plaintiff, Craven, had lost his leg through the negligence of the railroad. The jury returned a verdict for Craven and assessed damages at $28,000. A motion to set aside the verdict or to grant a new trial was denied, and judgment was entered on the verdict. Defendant, Atlantic Coast Line Railroad Company, has appealed.

Plaintiff entered the service of defendant railroad in April, 1942. His injuries occurred at 12:45 P. M. on March 18, 1943. He had left Richmond, Virginia, early that morning as a brakeman on a freight train, in charge of Conductor J. I. Sargent, bound for the South Rocky Mount, North Carolina, yards. These yards are very extensive, being some two or three miles in length, and are always a scene of great activity. A group of buildings is the focal point of the yards, including the Yard Office, the restaurant, and the washrooms used by the railroad's employees.

These buildings are separated from South Main Street by five tracks, two of which are main line tracks. Another, that nearest the building, leads to a ladder frequently used in the classification of cars. At this point, there is heavy traffic arising both from the passage of through trains and from the switching and classification activities of the yard. Across these tracks from the yard lie the restaurants and other attractions of South Rocky Mount. In 1942, to protect certain young ladies from getting their feet muddy, the Yardmaster had a walkway built up across these tracks and level with them. This walkway provided the best passage over the tracks in the vicinity, so that the railroad's employees were accustomed to use this walk in pursuance of their duties.

When the train on which the plaintiff was serving came into this yard, the conductor alighted at the yard office to make his report; the train proceeded on to the proper place to deposit its cars. It was then the duty of the engineer and the plaintiff brakeman to put the engine away, which was done about twenty minutes before the accident occurred. Plaintiff then endeavored to seek out the conductor to report the time of completion of his duties. It was his understanding that this should be done as soon after the completion of a trip as possible and the rules of the railroad, although somewhat ambiguous, could readily leave plaintiff with this impression. When he worked under Conductor Sargent, plaintiff always went immediately to the yard office to find him. When Sargent was not there, plaintiff usually crossed the tracks onto Main Street, where Sargent could normally be found. Failing in this, plaintiff would make his report later when they happened to meet in South Rocky Mount, or when they reported for the return trip to Richmond. About half the time this report to Sargent was at the yard office or over on South Main Street; the other half, when plaintiff reported for the return trip. This was the custom followed by many of the other train crews.

On the day in question, Sargent was not in the yard office. Plaintiff crossed the tracks to South Main Street; but neither was Sargent there. So plaintiff crossed back to the yard for purpose of washing up in the railroad's washroom. He found his way blocked by a long "cut" of cars slowly being moved north on that track nearest the washroom. This was not unusual; passage

here was frequently blocked for anywhere from two to fifteen minutes. Although encumbered by a lantern and a lunchbag, plaintiff mounted a gondola car of the New York Central Railroad by the side ladder on its south end, stepped around a narrow flange on the end of this car, and attempted to step across to the flat car following. In his effort to get to the washroom, plaintiff fell and lost his leg.

The reason for his falling is not clear. Plaintiff said that something on the end of the gondola car held his leg and tripped him; another witness says plaintiff's heel was caught in his own trousers. This gondola car was identified and inspected by the railroad's employees, and found to be in a safe condition. Plaintiff did not produce any evidence to the contrary.

It should be emphasized here that defendant railroad stresses safety. The first notice in the employees rule book is to this effect. According to the evidence, other employees of the railroad were known to have done just what plaintiff did, but whenever the yardmaster at South Rocky Mount saw this, he immediately cautioned the employee against such conduct and pointed out that it was a violation of all safety principles. There was no reason other than impatience for plaintiff's doing what he did.

■ The main issue raised by this appeal is that of the railroad's negligence. There is, however, a preliminary consideration which we will deal with briefly. No claim can be pursued under the Act unless it arose out of interstate activities. Although admitting that plaintiff would have been engaged in interstate activities had he gone directly to the washroom after putting the engine away, the railroad argues that plaintiff's trip over the tracks to South Main Street broke the continuity of such activity and removed plaintiff from the protection of the Act. We think this contention is without merit. Since plaintiff was led reasonably to believe that he was required to report to his conductor as soon as possible and since this practice of leaving the yard to do so was acquiesced in by the railroad's agents, such practice was a part of his interstate duties and did not lend a different

character to his attempted visit to the washroom. See, Erie R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057; North Carolina R. Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591; Brock v. Chicago, R. I. & P. R. Co., 305 Mo. 502, 266 S.W. 691, 36 A.L.R. 891.

■ This case must be reversed because there was no substantial evidence upon which the question of negligence could have been submitted to the jury. Although decisions under the Act are most liberal in allowing employees to recover, it has been reaffirmed time and again that recovery lies only upon the concurrence of negligence and injury as cause and effect. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. We are unable to see how a jury could have found either.

■ An employer has a duty to provide his employees a safe place to work, but this duty cannot be absolute. Dangers are implicit in such occupations as railroading, and railroads are not insurers of their employees. Plaintiff lays great stress on Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, in which this Court was reversed. That case discussed the then new 1939 Amendment to the Federal Employers' Liability Act dealing with assumption of risk by employees, 45 U.S.C.A. § 54, and said, 318 U.S. on page 54, 63 S.Ct. on page 446: "We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence' ".

Prior to this Amendment assumption of risk was a defense, even to a negligent employer. Seaboard Air Line Ry. Co. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062. But neither the 1939 Amendment nor the Tiller case's interpretation thereof has the effect of imposing upon a railroad liability without fault. The Amendment, 45 U.S.C.A. § 54, by its terms, applies only where the employer has been negligent.

And this was recognized in the Tiller case 318 U.S. at page 67, 63 S.Ct. at page 451, 87 L.Ed. 610: "* * * (The Act leaves) for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate cause of the injury."

It is not argued that the train in question was negligently operated. The railroad's negligence allegedly lies in its maintaining a yard fraught with unnecessary danger, or in its failure to remove certain dangers after they were discovered to exist. As-suming for the moment that the railroad was not negligent in failing to provide a bridge or some other absolutely safe means of passage, we can find nothing in the lay-out or arrangement of the yard subjecting to unnecessary danger an employee of plaintiff's class (he was a brakeman). In the course of his duties plaintiff necessarily had to cross tracks, and his way would in-evitably be obstructed at times by moving trains.

In citing the railroad's failure to remove certain dangers as negligence, plaintiff specifies various remedies: move the walk-way; break the train and cuts of cars or so schedule them as to block the passage for no more than a reasonable time; or build a bridge over, or a tunnel under, this cross-ing.

█ Moving the walkway would have been of little help. For a great distance on one side of the track lay South Rocky Mount; on the other, the yard. Some communication was necessary. A complete rearrangement of the yard, a bridge or a tunnel, or some system of traffic regulation might have prevented this accident. The great majority of railroad accidents (in-cluding those not involving negligence) could by some means be prevented. The test is whether reasonable men, examining the circumstances and the likelihood of injury, would have taken those steps neces-sary to remove the danger. Urie v. Thomp-son, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Bailey v. Central Vt. R. Co., 319 U. S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Chica-go, M. & St. P. R. Co. v. Moore, 8 Cir., 166 F. 663. Under the Federal Employers'

Liability Act, the common law rule of ordi-nary prudence maintains, and a railroad is not necessarily required to employ the latest or the safest devices. See, Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; Raudenbush v. Baltimore & Ohio R. Co., 3 Cir., 160 F.2d 363; McGivern v. Northern Pacific Ry. Co., 8 Cir., 132 F.2d 213; Cole v. Seaboard Airline Ry. Co., 199 N.C. 389, 154 S.E. 682; Grubbs v. Lewis, 196 N.C. 391, 145 S.E. 769. We do not see how ordinary prudence could have required the construction of a bridge or a tunnel, or the disruption of the railroad's activities suggested by the plain-tiff. That remedy would have been all out of proportion to the risk involved. The remedy was with plaintiff, and lay merely in the exercise of that standard of personal safety that he had been instructed to use.

In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, relied upon by plaintiff, the danger was one of almost certain injury; inhalation of silica dust for a long period of time almost invariably leads to silicosis. Therefore it was proper for a jury to find that a railroad breached its duty to an employee by failing to main-tain its sanding equipment so that he would not be exposed to this dangerous element. Furthermore, failure to comply with the Boiler Inspection Act, 45 U.S.C.A. § 22 et seq., was negligence *per se*. Urie did not have the means to protect himself; his choice was to use the equipment as it was presented to him or to seek a livelihood elsewhere.

█ The chances of injury to plaintiff, however, were no greater than those inher-ent in his type of employment. At no other place in the yard was it negligent for the railroad to obstruct plaintiff's way with moving cars, or to fail to provide a bridge over the tracks. It cannot be said that a different standard of maintenance was re-quired to protect plaintiff at that point where he entered upon or left his duties. The danger was no greater at this point and plaintiff, as a brakeman, knew how to avoid whatever danger that existed. It would have been unreasonable to expect the rail-road to take those extreme measures nec-

essary to remove this slight danger. The railroad's duty did extend to the removal of all dangers reasonably to be anticipated as an incident of plaintiff's employment but this duty was fulfilled when the railroad had defined the dangers to plaintiff and instructed him how to avoid them.

In Wilkerson v. McCarty, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497, also relied upon by plaintiff, it was held that evidence of negligence was sufficient to go to a jury. There a plaintiff stepped around a newly installed safety chain to get to the other side of a 4' wide pit by means of a board placed thereacross. The board being greasy, the plaintiff slipped to his injury. Evidence of negligence in several particulars was presented in that case; prior to the installation of the safety chain the board was used as a means of passage whenever it was convenient, and at no time were the employees forbidden to do so; the ease with which the safety chain could be circumambulated was practically an invitation to do so; and, in the nature of things, the board was almost certain to become greasy and dangerous. The case before us presents no equivalent facts.

Nor did plaintiff here introduce any expert evidence as to the construction and layout of busy railroad yards which would indicate that the layout of the South Rocky Mount yard involved any negligence on the part of the railroad. Neither was it even shown that this layout differed essentially from the usual layout of busy railroad yards.

Moreover, negligence must operate as cause, and injury as effect. Tiller v. Atlantic Coast Line R. Co., supra; Wilkerson v. McCarthy, supra. "Proof of negligence in the air, so to speak, will not do." Pollock, Torts, 11th ed. A negligent layout of many tracks in this yard might be the cause of injury to a stranger to railroad yards, confused and befuddled by a maze of tracks and a variety of noises. But the cause of plaintiff's injury lies elsewhere in the facts. He was accustomed to railroad yards and presumably understood them; he knew the dangers and how to avoid them. He had been instructed to regard safety as a first

consideration. Yet in spite of his intelligence and knowledge, plaintiff did something that every instinct of safety and instruction of caution forbid. This recklessness, and not the assumed negligence of defendant, exposed plaintiff to unnecessary danger and caused his injury. See Chesapeake & Ohio R. Co. v. Wills, 111 Va. 32, 68 S.E. 395, 32 L.R.A.,N.S., 280.

To be specific, it was not the layout in the yard, nor was it the arrangement of multiple tracks, that caused the injury to plaintiff. Had there been here only a single track, on which a cut of cars was moving, the result would have been the same. It would then have presented to plaintiff the same alternative which, in the instant case, he faced—that of climbing over the moving train or of waiting until the train had passed. And, while we have held that this case is covered by the Act, on the ground that interstate commerce was involved, it is not without importance that no compelling necessity, no duty to the railroad, impelled plaintiff to take the obvious risk of attempting (encumbered as he was) to climb over a moving train. He engaged in this hazardous undertaking merely in order that he might wash up a few minutes more quickly.

It appears that the jury was also permitted to speculate upon a possible defect in the gondola car from which plaintiff fell. Plaintiff's counsel dealt with this in his closing argument, and it was not covered by the charge to the jury. Without discussing the duty of a railroad to maintain in safe condition the equipment it uses, it can be said that no reasonable inference of negligence can be drawn from the condition of this car. The only evidence of defect was plaintiff's statement that something on this car held his foot and tripped him. Against this was the testimony of an eyewitness to the effect that it was plaintiff's own trouser leg that he was caught on. Also, an examination of the car shortly after the accident disclosed that there were no defects or unsafe appurtenances. It is our opinion that plaintiff's lone statement is too unsubstantial to support any finding of negligent maintenance of an unsafe car. Further-

more, for reasons already given, we do not see how a jury could have found an unsafe car to be the cause of plaintiff's injury.

Plaintiff also argued that failure of the railroad to specify a definite time and place for him to report to his conductor was negligence proximately causing his injuries. There is no merit in this contention.

For the reasons stated, the judgment of the District Court is reversed and the case is remanded to the District Court with instructions to enter judgment for the defendant railroad.

Reversed.