

---

David F. Binder, Bernstein, Bernstein, Levy & Harrison, Philadelphia, Pa., Martin H. Philip, Palmerton, Pa., for plaintiff.

Paul S. Parsons, Baltimore, Md., Anderson, Ports, May, Beers & Blakey, York, Pa., for defendant.

FOLLMER, District Judge.

This case was tried to a jury and resulted in a verdict for plaintiff in the sum of $40,000.00. The matter is now before the Court on motion of defendant for judgment notwithstanding the verdict or for a new trial.

The Complaint alleges that decedent, Cuddy, while in the employ of defendant as an engineman and while in and about the premises of defendant, on or about November 15, 1958 was shot and killed by one James T. Haney, likewise an employee of defendant. The Complaint further alleges that the death of said decedent was due to the negligence of defendant in "hiring and maintaining in its employ, a man known to be difficult to get along with, dangerous and vicious, and who was known to have a specific, notorious tendency to do bodily harm to others, all of which facts the defendant knew and did know for a long time prior the decedent's murder."

The Court refused defendant's motion to dismiss the action because the Complaint failed to state a claim against defendant upon which relief could be granted under the Federal Employers' Liability Act.

At a chamber conference immediately before the opening of the case to the jury plaintiff was permitted to amend the Complaint by adding two paragraphs as follows, to wit:

"16. The defendant railroad was negligent in that after having received information to the effect that

**Janet Marie CUDDY, Administratrix of the Estate of James R. Cuddy, Jr., Deceased, Plaintiff,**

v.

**WESTERN MARYLAND RAILWAY, Defendant.**

Civ. A. No. 7005.

United States District Court
M. D. Pennsylvania.

Dec. 6, 1963.

See also D.C., 210 F.Supp. 750.

its employees were carrying guns on the job, it took no steps to determine whether or not this information was true, and took no steps to prevent its employees in the future from carrying guns or loaded guns on the railroad, and this created a potentially dangerous condition for its other employees.

"17. The defendant was negligent in that after receiving information that some of its employees were carrying guns while working on the railroad during working hours, it gave no warning whatsoever to its employees of this situation."

In her brief contra the current motion, plaintiff states:

" * * * The plaintiff did not introduce evidence to show that James T. Haney was a man of known dangerous and vicious character. The plaintiff did not argue this point as a ground of liability to the jury. The plaintiff did not place this issue in front of the jury or call it to the jury's attention at any time during the trial or in the summation of counsel for the plaintiff to the jury prior to their deliberations. (Plaintiff's proof and argument to the jury was simply and clearly that the defendant, after having received information to the effect that its employees were carrying loaded firearms on its premises during the hunting season did not take such steps as a prudent railroad should have taken in order to alleviate the great danger that this situation presented, did not take adequate and proper steps to protect its employees, took no steps to warn its employees that their fellow employees were carrying loaded firearms, and passed a rule forbidding the carrying of firearms by its employees while on freight trains, which was wholly inadequate and imprudent in the circumstances to alleviate the great existent danger."

There having been no testimony educed before the jury on the question of Haney's known dangerous and vicious character, there remained for the jury's consideration only the question of the negligence of defendant in connection with the use of firearms.

The testimony in this case is that Haney had completed his shift at work and Cuddy, the deceased, was expected to report for work at the next shift. Furthermore, the testimony of decedent's father was uncontradicted that all decedent had to do at the moment was to stand at a street corner in an area used by the railroad employees to go to and from their work; that in reply to a question from the father as to whether that was all he had to do, decedent replied, "Right now it is", and that he wanted to talk to Haney. Just about that time Haney appeared and the altercation took place. Decedent slapped Haney and then Haney shot decedent.

Granted that Cuddy was on his way to work, he certainly was under no compulsion so far as his work was concerned to stop and await the arrival of Haney. The evidence is clear and undisputed that decedent had stopped on his way to work for the express purpose of talking to Haney. It is also clearly undisputed that in the altercation which followed the confrontation decedent was the aggressor. Cuddy's deviation was not for any reason related to his employment but for a purely personal one.

In General Accident Fire & Life Assurance Corp., Ltd. v. Prescott, 80 Ga. App. 421, 56 S.E.2d 137, at page 138, the Court clearly and forcefully disposed of the temporary deviation argument as follows:

"Where an employee breaks the continuity of his employment for purposes of his own and is injured before he brings himself back into the line of his employment, the injury does not arise 'out of and in the course of' his employment * *."

I fully concur in and adopt as my own the following statement of the Court in

Quirk v. New York, C. & St. L. R. Co., 7 Cir., 189 F.2d 97, 101 (1951):

> "We are not unmindful of the liberal interpretation which the courts have placed, and properly so, upon the Federal Employers' Liability Act, designed for the benefit and protection of railroad employees but, even so, there is a point beyond which its application must be denied. Plaintiff's position in the instant case, if accepted, would come close to stripping it of any limitation."

And now, with relation to plaintiff's contention that defendant was negligent in taking no steps to prevent its employees from carrying guns on the railroad and in not giving a warning after receiving information that some of its employees were carrying guns.

Admittedly, there was testimony in the case that on occasion some of defendant's employees did carry guns. On one occasion a report was made to the division superintendent of defendant that a helper engineer was carrying a shotgun and riding the back of the tender of the engine when it was backing down the hill, and he would shoot rabbits by the headlight. This employee was called in the office of the District Superintendent and reprimanded. After that, in 1953, the following rule was passed:

> "25(h). Carrying unauthorized firearms and ammunition on freight trains is prohibited."

The uncontradicted testimony of the supervisory officials of the company was that they did not know of their personal knowledge of the carrying of firearms on freight trains after the rule was promulgated. It was also their testimony that they received no report of any such violation. There was no evidence that the company knew or had reason to know that firearms were on the company's trains in violation of the rule, and obviously the circumstances did not call for any drastic plan for frisking each employee as he entered upon his work.

A careful reading of the testimony in this case leads to the inevitable conclusion that the plaintiff utterly failed to produce any evidence whatever of knowledge on the part of the defendant through its supervisory officers of the carrying of firearms by its employees on freight trains contrary to Rule 25(h). Under such circumstances there is no basis on which negligence could be imputed to this defendant in connection with Haney's possession of a concealed revolver on this occasion.

Defendant's motion for judgment notwithstanding the verdict will be granted.