**Thornton R. AMBOLD, Appellant,**

v.

**SEABOARD AIR LINE RAILROAD
COMPANY, Appellee.**

**No. 9838.**

United States Court of Appeals
Fourth Circuit.

Argued April 7, 1965.

Decided April 29, 1965.

Howard I. Legum, Norfolk, Va. (Fine, Fine, Legum, Schwan & Fine, Norfolk, Va., on the brief), for appellant.

Lewis T. Booker, Richmond, Va. (Eppa Hunton, IV, and Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BELL, Circuit Judge, and STANLEY, District Judge.

EDWIN M. STANLEY, District Judge.

The plaintiff, Thornton R. Ambold, brought this action under the Federal Employers Liability Act, 45 U.S.C. § 51 et seq., in the United States District Court for the Eastern District of Virginia, for personal injuries sustained in the course of his employment. The defendant, Seaboard Air Line Railroad Company, is charged with negligently failing to use ordinary care to provide the plaintiff with a reasonably safe place to work.

The case was tried before a jury. At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved for a directed verdict on the ground that the plaintiff had not shown that his injury resulted, in whole or in part, from the negligence of the defendant. Reserving a decision on the motions, the case was

J. Spencer Bell, Circuit Judge, dissented.

submitted to the jury, under appropriate instructions, which returned a verdict for the plaintiff in the amount of $12,875. The defendant thereafter moved for judgment notwithstanding the verdict. The District Judge sustained the motion and entered a judgment for the defendant on the merits. We affirm the judgment of the District Court.

There is no serious dispute as to the basic facts. On April 8, 1961, the date of his alleged injury, plaintiff was employed by the defendant at its diesel shop in Richmond, Virginia, as a machinist. At that time he was 60 years of age and had worked for the defendant about 19 years. His principal duty was to check air brakes on diesel locomotives. He had been performing this identical work at the same location for several years. In the performance of his duties, plaintiff was required to go on board diesel locomotives to make inspections.

The portion of the shop where plaintiff worked consisted of a long wooden platform, generally referred to as the shop platform, which ran parallel to the railroad tracks. The locomotives to be inspected were "spotted" on these tracks. The shop platform was built over a concrete pit, the floor of which was approximately seven feet below the level of the platform. The diesel locomotives had metal platforms at the end, called the locomotive platform, and a metal catwalk running along the side. Both the catwalk and the locomotive platform were about the same elevation as the shop platform. Leading down from the locomotive platform were three steps, referred to as a stepwell, each two feet wide and 14 inches high. These steps were beneath the level of the shop platform and were designed for use in boarding and leaving the locomotive. The distance from the locomotive platform across the stepwell to the shop platform was from 31 to 35 inches.[1] The catwalk running alongside the locomotive was about 11 inches from the shop platform. At each side of the stepwell there were handrails for use in boarding and leaving the locomotive, and to assist in stepping to and from the shop platform. Handrails, about 38 inches high, were also outside the catwalk.

On the day in question, the plaintiff was on board one of defendant's diesel locomotives for the purpose of checking the air brakes. The locomotive was in a stationary position and parallel to the shop platform. Shortly before noon, after he had finished checking the locomotive, plaintiff left his work for lunch. He had no tools in his hand, and carried only a flashlight in his pocket. As he stepped from the locomotive platform across the stepwell, he slipped and fell to the concrete shop floor beneath. There was no grease or oil or other similar substance on plaintiff's shoes, the platform, or "anywhere around." Lighting conditions in the diesel shop were good that day. Light came from the skylight overhead and an open door at the end of the pit. The plaintiff testified that the weather was good, and that he had no difficulty seeing where he was going. With commendable candor, plaintiff stated that the accident happened because he "misjudged" the distance from the locomotive platform to the shop platform, and simply did not "take a long enough step."

The plaintiff had been taking the exact same step, day after day, 50 to 75 times a week, for several years prior to his fall, and he had never fallen before. When he returned to work following his injury, he continued to take the same step, with the same frequency, for another two and one-half years, and never fell again. Never at any time did the plaintiff make any complaint whatever about having to take the step, nor did he make any suggestion about using a ramp across the opening between the diesel platform and the shop platform. No employee of the defendant, including

1. This estimate of distance was given by the witness Ellis. However, the plaintiff, and the other witnesses offered by the parties, estimated the distance to be not more than 32 inches.

the plaintiff, ever protested concerning any danger or hazard in taking the step, either before or after the defendant's injury. Mr. Jarratt, the diesel shop foreman, an employee of the defendant for 51 years, testified that never in his experience in the diesel shop had anyone fallen while taking the same step from the locomotive platform to the shop platform, a step his machinists took 50 or more times a day. The testimony of Mr. Jarratt, while offered by the defendant, was not questioned or challenged by the plaintiff.

L. A. Ellis, another machinist employed by the defendant, was permitted to testify, over objection, as an expert on safety and with respect to a practice he had observed in the defendant's shop in Jacksonville, Florida. Ellis testified that in the Jacksonville diesel shop, a metal ramp was furnished to provide access to locomotives from the shop platform. However, the evidence disclosed that the situation in Jacksonville was completely different from the situation in Richmond. At Jacksonville, the shop platform was from 6 to 8 inches further from the locomotive platform than at the Richmond diesel shop, and the ramp extended from the shop platform to the locomotive at a point under the handrail running along the catwalk. Further, the Jacksonville ramp was used by machinists while sliding, handing and carrying parts and tools between the locomotive catwalk and the shop platform. In addition to the greater distance between the shop platform and the locomotive platform, the Jacksonville shop did repair or overhaul work, which usually required 24 or more hours. In Richmond, this type of work was performed at the roundhouse and none was done at the diesel shop. The Richmond diesel shop is concerned primarily with minor repairs requiring not more than 8 hours of work. Although Ellis had observed the ramps used in Jacksonville a considerable time prior to plaintiff's injury, he never made any complaint or suggestion to the defendant concerning any danger or hazard with respect to persons stepping to and from the

locomotives at the Richmond diesel shop. Testifying as an expert, Ellis stated that a step from the locomotive platform to the shop platform in Richmond would be hazardous if the lighting conditions were not good at the time, but that such a step would not be hazardous if lighting conditions were satisfactory. Specifically, he stated that if it was "a light day outside," and in the "middle of the day," he would not say there was anything hazardous about making the step.

The narrow question presented for decision is whether, with reason, the conclusion may be drawn that the negligence of the defendant played any part at all in producing the injury for which the plaintiff seeks damages. We are not unmindful of the liberal interpretation which the courts have placed upon the Federal Employers Liability Act, which was designed for the benefit and protection of railroad employees. Even so, the statute does not make the employer an insurer, and there is a point beyond which its application must be denied. Inman v. Baltimore & Ohio Railroad Company, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959), and Atlantic Coastline R. Co. v. Craven, 4 Cir., 185 F.2d 176 (1950).

In evaluating the evidence, largely undisputed, to determine whether the defendant was shown to be negligent, even in the slightest, in failing to provide the plaintiff with a reasonably safe place to work, thereby making the case for the jury, we take as a guide the case of Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), where it is stated:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.

Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. * * *

" * * * The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. * * *

\* \* \* \* \* \*

" * * * The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. * * "

While the Rogers case emphasizes the liberal interpretation that must be placed upon the statute, and defines the narrowly limited area in which the courts are permitted to disturb jury verdicts in cases of this type, we do not understand the decision to relieve the plaintiff from the burden of proving some act of negligence on the part of the railroad. In Dessi v. Pennsylvania Railroad Co., 3 Cir., 251 F.2d 149 (1958), cert. denied 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958), the Court, in discussing the Rogers case, stated:

"This language [in the Rogers case] indicates that the role of a defendant's negligence in helping bring about the injury may be small. It does not suggest that an F.E.L.A. plaintiff can carry his burden of proof without evidence that the role was real. Indeed, the paragraph containing the quoted sentence continues with this observation:

" 'Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. * * * '

"The repeated use of the phrase 'with reason'—it appears three times in this short paragraph—is a persuasive indication that the court intended no departure from the familiar and normal requirement of our jurisprudence, as repeatedly stated in its own rather recent decisions, that the party with the burden of proof must 'present probative facts from which the negligence and the causal relation could reasonably be inferred. * * * ' "

In many respects, the instant case resembles, and we believe is ruled by, the decision in Inman v. Baltimore & Ohio Railroad Co., 361 U.S. 138, 80 S.Ct. 242 (1959), where the employee claimed damages for an injury received when an intoxicated automobile driver ran into him one midnight while he was on duty flagging traffic for a passing train. The railroad was charged with negligence for failure to use ordinary care to provide a reasonably safe place for the employee to work. The judgment entered on the jury verdict for the plaintiff was reversed by the Court of Appeals of Ohio for the reason that "there was a complete failure of proof to establish * * * negligence." The Supreme Court, using the Rogers case as a yardstick, affirmed, observing that the "burden of proving that the crossing was an unsafe place to work was on petitioner," and that such proof "depended on some type of testimony showing the hazards at the crossing." It was found to be of considerable significance that "there [was] no evidence of complaint to the railroad, nor * * * other testimony of similar occurrences

in the record." Under such circumstances, it was reasoned that the evidence was "too slender a reed" to say that the decision of the Ohio court was erroneous. Here, like in Inman, there was no evidence of complaint to the railroad, or testimony of similar occurrences. Plaintiff had made the identical step many times each week over a period of years, both before and after his injury, without falling or complaining of any hazard. The same was true with respect to all other machinists working with the plaintiff. No other hazard, such as oil, grease or debris, was present. The area was well lighted, and the only witness who testified that the condition was hazardous qualified his opinion by saying that no hazard would exist if there was sufficient light to enable a person to see. This witness was not present when plaintiff fell, and did not profess to know anything about the lighting conditions at that time. The plaintiff stated he could see where he was stepping, and did not contend that poor lighting played any part in the accident. His only explanation was that he simply misjudged the distance and did not take a long enough step. Under these circumstances, to hold that a hazardous condition existed, or that the employer was negligent, even in the slightest, in not providing a safe place to work would, in our opinion, be tantamount to stripping the statute of all limitations and constituting the defendant an insurer of the safety of its employees. Consequently, we believe that the evidence in this case, when taken in the light most favorable to the plaintiff, presents one of those "infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." Rogers v. Missouri Pacific Railroad Co., supra.

We believe our decision also finds support in Cuddy v. Western Maryland Railway, 229 F.Supp. 443 (M.D.Pa., 1963), where a motion by the railroad for judgment notwithstanding the verdict was sustained. The judgment was affirmed by the Court of Appeals, Cuddy v. Western Maryland Railway, 3 Cir., 332 F.2d 371 (1964), and certiorari was denied by the Supreme Court of the United States, 379 U.S. 840, 85 S.Ct. 78, 13 L.Ed.2d 46 (1964). Also see Atlantic Coastline R. Co. v. Craven, 4 Cir., 185 F.2d 176 (1950), where the Court of Appeals reversed the trial court for failure to set aside the jury verdict for the reason that "there was no substantial evidence upon which the question of negligence could have been submitted to the jury," and Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547 (1951), affirming the action of the district court in sustaining a motion for judgment notwithstanding the verdict.

Since there was no evidence of negligence, the District Court properly sustained the motion for judgment notwithstanding the verdict.

Affirmed.

J. SPENCER BELL, Circuit Judge (dissenting).

I do not agree that fair-minded jurors could not "honestly differ whether fault of the employer played any part" in Ambold's injury. Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 510, 77 S.Ct. 443, 450 (1957). Time and time again in these FELA cases the Supreme Court has said that "only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear." Basham v. Pennsylvania R.R. Co., 372 U.S. 699, 700–701, 83 S.Ct. 965, 10 L.Ed. 2d 80 (1963). I think the existence of a condition which required the plaintiff to take a thirty-one to thirty-five inch step over a seven foot void in the performance of his duties was sufficient evidence of an unsafe place to work to take this case to the jury. The arguments set forth in the majority opinion should have been, and undoubtedly were, made to the jury. The case having been properly submitted to them, I do not think the jury's verdict should have been disturbed. Dennis v. Denver & Rio Grande Western R.R. Co., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963); Gallick v. Baltimore & Ohio

R.R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Webb v. Illinois Central R.R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); Rogers v. Missouri Pacific R.R. Co., supra.

Believing that the judge's intervention to set aside the verdict was an intolerable invasion of the jury's province, I would reverse the decision of the district judge and reinstate the jury verdict.