948 F.2d 1280
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard Delmar DAVIS, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, t/a Amtrak,
Defendant-Appellee.
 No. 91-1052.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 1, 1991.
Decided Dec. 4, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-90-792-S)
 Argued: Roger John Greezicki, Savage & Schwartzman, P.A., Baltimore, Md., for appellant; David Bart Goldstein, Semmes, Bowen & Semmes, Baltimore, Md., for appellee.
 On Brief: Irving Schwartzman, Savage & Schwartzman, P.A., Baltimore, Md., for appellant; Mark J. Daneker, Semmes, Bowen & Semmes, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER and NIEMEYER, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Davis initiated this suit seeking damages under the Federal Employers' Liability Act ("FELA") for injuries he sustained while working for Appellee National Railroad Passenger Corporation ("Amtrak") as a railroad trackman. The district court granted summary judgment in favor of Amtrak by Memorandum Opinion.
 
 
 2
 We agree with the district court that the evidence failed to support a claim that negligence on the part of Amtrak contributed in any way to the accident in which Appellant was injured. The decision granting summary judgment is affirmed.
 
 
 3
 * Appellant Davis worked as a trackman for Amtrak from 1976 until he was injured in 1988. At the time of his injury, Davis was part of a work crew assigned to move railroad ties from one track to another. Davis and his crew followed standard procedure for this assignment, positioning two workers at the front of each eight foot, six inch railroad tie and two at the back, and using tie tongs to carry the tie. The crew carried five ties from No. 4 track to No. 1 track without incident. While they were carrying a sixth tie down from track level to a nearby truck, Davis slipped on high, loose ballast on the downgrade and fell, seriously injuring his back. Ballast is coarse gravel used to form the bed of a railroad, and Davis explains that "low" ballast is relatively level with the track, while "high" ballast means that to cross the track one has to descend a steeper slope. Appellant's FELA suit was based on claims that Amtrak was negligent in failing to provide a safe place to work or, alternatively, that Davis' fellow crew members, Amtrak's employees, were negligent in selecting a path that required descending a steep downgrade.
 
 II
 
 4
 Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the parties do not dispute material facts that might affect the outcome of an action, and under those facts the moving party is entitled to judgment as a matter of law. The standard for appellate review of a summary judgment is de novo review. Miller v. Federal Deposit Insurance Corporation, 906 F.2d 972, 974 (4th Cir.1990). The U.S. Supreme Court established the following standard for claims under the FELA in Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506-7 (1957):
 
 
 5
 Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.... The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence.
 
 
 6
 The FELA was enacted with a humanitarian purpose and is to be liberally construed by the judiciary in favor of injured railroad workers. Urie v. Thompson, 337 U.S. 163, 180 (1949). Although submitting the question of employer negligence to a jury "may be crude, archaic, and expensive as compared with the more modern systems of workmen's compensation ... it is the system which Congress has provided." Bailey v. Central Vermont Railway, 319 U.S. 350, 354 (1942). As Rogers continues, "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." 352 U.S. at 510.
 
 
 7
 Application of the Rogers standard is necessarily an individualized process for each case. In applying the Rogers standard to the facts in the instant case, a number of decisions of the U.S. Supreme Court and the U.S. Court of Appeals for the Fourth Circuit are instructive. In Hurley v. Patapsco, 888 F.2d 327 (4th Cir.1989), appellant was a machinist with 11 years' experience in a railroad machine shop. He was injured while using a lathe, when his sweater caught on a clamp and pulled him into the machinery. Appellant brought suit under the FELA and argued that the railroad caused the accident by negligently providing inadequate lighting.
 
 
 8
 The Fourth Circuit Court of Appeals upheld a directed verdict in favor of the railroad in Hurley, relying on appellant's long experience using the machine without injury, on the fact that appellant had made a request for individual lighting for the machine on only one occasion, several years before the accident, and on the lack of prior notice to the railroad of a possibly dangerous condition. Id. at 329. The court remarked that appellant failed to provide an "evidentiary link between the allegedly inadequate lighting and his accident," i.e. "why the lighting in the repair shop made operation of the lathe dangerous or how direct lighting could have prevented [the] accident." Id. at 330.
 
 
 9
 Ambold v. Seaboard, 345 F.2d 30 (4th Cir.), cert. denied, 382 U.S. 831 (1965), involved a 60-year-old machinist with 20 years' experience in appellee railroad's diesel shop. Appellant was injured when he tried to cross from a train platform, across a stepwell, to the shop platform and slipped, falling seven feet to the concrete floor below. Appellant, by his own admission, misjudged the distance from one platform to the other. The court of appeals noted that appellant took the same exact step, without incident, many times a day for several years, both prior to and for two and a half years after the accident in question. 345 F.2d at 31. No employee, appellant included, had ever complained that the access from one platform to the other was hazardous. The court upheld the judgment, finding no evidence that the railroad had failed to provide a reasonably safe work place.
 
 
 10
 The dispute in Inman v. Baltimore & Ohio Railroad Co., 361 U.S. 138 (1959), arose when a railroad crossing watchman was struck and injured by a drunk driver at a busy intersection. The driver drove around a line of cars waiting at the crossing just as the train cleared the intersection and struck the worker, in an attempt to be the first car to cross. Appellant argued that the railroad was negligent in not providing a reasonably safe place for him to work at the crossing.
 
 
 11
 A jury found for the worker, but the verdict was overturned on appeal. The U.S. Supreme Court sustained the appellate court's decision, finding that the evidence was too thin to support a charge of negligence by the railroad. 361 U.S. at 140. Citing the Rogers standard for finding a jury question, the Court noted that appellant had been on the job, with the same duties, for seven years without mishap, and found that testimony by a single witness that many drivers "jump the gun" at that intersection was insufficient to carry the worker's burden of proof that the crossing was unreasonably unsafe.
 
 
 12
 Like the plaintiffs in Hurley, Ambold, and Inman discussed above, Appellant Davis had been on the job for many years and had performed the same task as a routine matter throughout his employment with the railroad. In neither the instant case nor the three cases cited above had the railroad received complaints from workers that might have alerted it to the possible existence of an unreasonable hazard. Appellant Davis, like the three plaintiffs above, failed to provide the "evidentiary link" that would show how the railroad's negligence contributed to his injury.
 
 
 13
 Where courts have found valid claims under the FELA, they have relied on specific evidence that showed an arguable causal relationship between an act of omission by the railroad and a subsequent accident. In Aldridge v. Baltimore & Ohio Railroad Co., 789 F.2d 1061 (4th Cir.1986), like Inman, supra, a railroad crossing watchman was struck and injured by a drunk driver. In this case, the evidence created factual questions as to whether the railroad had followed normal procedure regarding placement of the train in the intersection and use of its engine bells. The court found that the jury reasonably concluded that the railroad's negligence was a factor in provoking the criminal behavior on the part of the automobile driver that led to the appellant's injury.
 
 
 14
 In Phillips v. Chesapeake and Ohio Railway Co., 475 F.2d 22 (4th Cir.1973), appellant was working as a field brakeman and was injured when he followed a supervisor's instructions to board a moving car and brake it, but the brakes did not hold. Appellant was 18 years old at the time of the accident and had received only four days of training. He claimed that he had never been told that the procedure he attempted was dangerous, although one of the railroad's witnesses admitted that boarding a train under those circumstances was unsafe. The court of appeals held that the jury could have found that the railroad had failed in its duty to train appellant to perform his job safely.
 
 
 15
 In Webb v. Illinois Central Railroad Co., 352 U.S. 512 (1956), decided immediately after Rogers, supra, petitioner was working on a cinder roadbed and was injured when he slipped and fell on an unnoticed, partially covered cinder that was about the size of his fist. The railroad conceded that the oversize cinder created a hazardous condition, but objected that the evidence of its negligence in causing or allowing the cinder to be there was insufficient to create a jury question. The court of appeals agreed with the railroad and reversed a jury verdict in petitioner's favor.
 
 
 16
 The U.S. Supreme Court in Webb found that petitioner had introduced enough probative facts to reach the jury on the question of negligence. 512 U.S. at 513. Petitioner presented evidence that three weeks before his fall the railroad had elevated the tracks in that area some five inches, using 15 cubic yards of cinder; that the railroad's practice was to try to prevent the presence of large cinders in a roadbed because they do not give good footing; and that the foreman in charge of the track elevation completed three weeks earlier testified that he did not screen the ballast for large cinders but merely did a visual inspection of the cinders before they were taken to the site. Id. at 514. The Court held that a jury could have concluded with reason that the railroad "negligently caused the cinder to be in the ballast used in the repair work and failed to use proper care to discover and remove it." Id. at 515.
 
 
 17
 In Aldridge, Phillips and Webb the railroad's act or failure to act was a departure from its own safety practices and had a demonstrated, logical connection to the cause of the accident at issue. Appellant in the case at hand has neither shown that Amtrak departed from its normal practice nor indicated how Amtrak caused or contributed to the accident. Given the fact that Davis fell on the ballast and was injured, the work place manifestly presented some hazard to workers. Davis has argued that the condition of the ballast caused his fall, but has not presented evidence to show how the ballast made working conditions unreasonably unsafe. He admitted that under the circumstances, there was no safer way to perform the task. He also acknowledged that he had seen and walked on high, loose, ballast before at various spots along the railroad, but when the accident occurred, he "just slipped." Rather than showing how the railroad was negligent, Davis seems to rely on a sort of res ipsa loquitur theory: he was injured while crossing high, loose ballast, therefore the railroad was negligent.
 
 
 18
 As the district court stated in its opinion granting summary judgment in the instant case, Congress has chosen to retain a fault-based system for railroad workers, despite repeated efforts to reform the FELA into a worker's compensation scheme and despite the fact that workers in almost every other industry are protected from on-the-job injuries regardless of fault. FELA leads to some unfortunate results for workers who are injured on the job in situations, like the one at hand, where no one is particularly at fault but where a worker's compensation scheme would allocate the irreducible risk of injury to the employer, rather than to individual employees.
 
 
 19
 Rogers does not set a standard of proof approaching the rigors of a proximate cause determination, but it requires that a plaintiff prove some degree of negligence by the railroad. Appellant failed to meet that burden. Accordingly, the decision is
 
 
 20
 AFFIRMED.